232 So.2d 662

**Willie R. MARCH**

v.

**The CITY OF HUNTSVILLE, a Municipal Corporation.**

**8 Div. 12.**

Court of Civil Appeals of Alabama.

March 4, 1970.

 

Griffin & Griffin, Huntsville, for appellant.

**THAGARD, Presiding Judge.**

This is an appeal by certiorari by the plaintiff, Willie R. March, from a judgment of the Circuit Court of Madison County, Alabama, in a contested workmen's compensation claim against the City of Huntsville, Alabama, a municipal corporation.

The appellant (plaintiff) was an employee of the Water Department of the City of Huntsville and had been so employed for 12 years. His main job was laying pipe, water mains, etc., which involved a great deal of bending and stooping in addition to lifting heavy weights.

On January 17, 1968, the appellant slipped in getting off a truck and fell, injuring the lower portion of his back. He was examined by several doctors among whom was Dr. Mitchell who had him admitted to the Huntsville Hospital. The appellant was in the hospital for a period of a month and during that time was in traction and was fitted with a back brace which he still wears. Dr. Mitchell consult-

Lanier, Shaver & Herring, and James E. Davis, Jr., Huntsville, for appellee.

ed with Dr. Arrington who examined the appellant and found him to be suffering from heart disease. Because of this heart disease Dr. Mitchell felt that it was too dangerous to operate on the appellant in order to correct the degenerative lumbosacral disc which was caused by the fall. Appellant testified that he had never had any heart trouble until he was hospitalized.

Suit was filed by appellant on November 25, 1968, under the Workmen's Compensation Act of Alabama, alleging that his back injury resulted in permanent partial disability of the body as a whole and reduced his earning capacity by 100%.

After a hearing of the case, the lower court, on June 13, 1968, found that as a direct and proximate result of the back injury, the plaintiff (appellant) sustained a permanent partial disability to the body as a whole "to the extent of 33⅓% which has permanently decreased his earning capacity by 33⅓%.".

Based on the appellant's stipulated weekly earnings of $78.07 before the accident, the court found that the appellant was entitled to the sum of $14.30 per week for 300 weeks. But, the court allowed the appellee (defendant) credit for the sum of $1,628.82 "as advanced payments on account of the compensation." The court also allowed credit against the award for the sum of $1,388.25 representing the total amount paid to the appellant by appellee's compensation carrier as compensation. The court found that this sum of $1,388.25 was for 24 weeks @ $43.09 per week as temporary total disability and 33 weeks @ $10.73 per week for permanent partial disability. From this finding appeal is taken.

■ Appellant filed his petition for certiorari on July 2, 1969, alleging the following: (1) the total credit of $3,017.70 allowed the appellee (defendant) was erroneous as to the amount of $1,628.82 which appellant alleges was wages paid to him by the city after the accident; (2) there was further error in the award because of the

failure of the court to make any allowance for temporary total disability; (3) that the court also failed to correctly determine the appellant's loss of earning capacity.

In support of allegation (1), supra, appellant argues that the payments amounting to $1,628.82 made by the water board of the city to appellant after the injury was incurred were made in the interest of good labor relations and the humane administration of city business, and *not* for the purpose of relieving the insurance carrier of a part of its liability. He cites Agricola Furnace Co. v. Smith, 239 Ala. 488, at page 491, 195 So. 743, at page 745, in which the court cited 71 Corpus Juris 865 as follows:

"* * * 'Payments made to the employee as wages for his services after the injury cannot be deducted from the award.' * * *"

Appellee cites, and apparently relies upon Title 26, Section 278, 1940 Code of Alabama (hereinafter referred to simply as Section 278), one sentence of which reads:

"* * * All moneys voluntarily paid by the employer *or* insurance carrier to an injured employee in advance of agreement or award shall be treated as advance payments on account of the compensation; *to encourage advance payments it is expressly provided that such payments shall not be construed as an admission of liability, but shall be without prejudice.*" (Emphasis supplied)

We think the answer to this particular assignment of error by the appellant depends upon the meaning of that part of Sec. 278 hereinabove quoted. As far as we have been able to find, the question as it is here presented has not been passed upon by the Supreme Court or the old Court of Appeals, and neither party has cited any Alabama decisions directly in point; so we must ourselves try to ascertain the legislative purpose and intent.

The appellate courts of this state have said so many times that the workmen's

compensation laws are to be liberally construed in favor of the injured employee that the principle has become axiomatic, and no citation of authorities should be necessary.

If a statute is susceptible of two constructions, one of which is workable and fair and the other unworkable and unjust, court will assume that legislature intended that which is workable and fair. State v. Calumet & Hecla Consol. Copper Co., 259 Ala. 225, 66 So.2d 726.

Bearing in mind the foregoing rules of construction, we think the word "or" and the clause after the semicolon, both of which we have emphasized, in the above quote from Section 278 are the keys to the legislative intent and purpose. Even though the words "to encourage advance payments" appear in the second clause of the sentence, it is plain to us that the purpose of both clauses is to encourage the employer, or his insurance carrier when there is insurance, to make advance payments to the disabled employee without waiting for a determination of the question of liability, the length of the disability, or the extent of the injuries. And since the disjunctive was used we are clear to the conclusion that if the employer were not insured the employer may take credit for voluntary advance payments against the amount of the ultimate liability, and when there is insurance the carrier may take credit for any advance payments made by it; but not that the insurance carrier may take credit for advance payments made by the employer.

The effect of the entire sentence is to encourage the employer or the insurance carrier, as the case may be, to make advances during the hiatus between the accident and determination of liability and extent of injury, which is a beneficent purpose. But to hold that the insurance carrier may take credit for advance payments made by the employer, in the absence of proof that the employer so intended, would be to hold that the legislature intended to penalize the injured employee and subsidize the insurance carrier. We do not believe the legislature intended to perpetrate any such folly.

This is not to say that the employer may not, even though it is insured, make payments later deductible as compensation, if such intention clearly appears. Our holding simply leaves the employer "freedom of choice", which we think he would exercise in favor of the employee a hundred times out of a hundred. We have taken the employer out of the straight jacket into which appellee's interpretation of the law would place him. The only evidence in the record on this question is the testimony of Martha Reynolds, Personnel Director of the three utilities boards of the City of Huntsville, in part as follows:

"Q What was it for, Mrs. Reynolds?

"A According to the policy of the three boards, we pay the full salary of an employee when they get hurt on the job.

"Q That's the regular policy of the three utility boards that you referred to?

"A At the present time.

"Q What is the policy as to how long he is paid?

"A Until some determination is made as to the extent of his injury or else he returns to work, or he is told by the doctor that he is able to return to work.

"Q Or until he is retired?

"A Correct."

At this point we quote approvingly from appellant's brief on his application for rehearing:

"Before passing to further discussion, Appellant respectfully wishes to mention a common sense proposition. Why would Huntsville Utilities, or any employer who pays a premium to a compensation carrier, pay money to an injured employee while the employee is unable to

work, if the result of such generosity was merely to relieve the carrier of part of its obligation under the contract of insurance? The obvious and logical reason for such payments to an injured worker is that the employer wishes to benefit his disabled employee not his compensation carrier, and to obtain such incidental benefit in the form of good will and happy labor relations as might accrue to the management. It is very novel to suggest that such payments are made for the purpose of relieving the employer's compensation carrier of that much of its legal liability under the policy of insurance."

We hold that the learned trial judge misinterpreted Section 278, supra, and that he erred to reversal in allowing the insurance company credit for the $1,628.82 paid by the water board to appellant.

■ Appellant contends that the lower court was in error in that it failed to make any allowance for temporary total disability. The court made a total award of $14.-30 per week for 300 weeks. It did not take into account the fact that the appellant had received payments for 24 weeks at $43.09 per week for temporary total disability. It was stipulated by and between the parties that the appellant was paid as temporary total disability $1,034.16. In Morris v. Dickson, 252 Ala. 588, 589, 42 So.2d 337, 338, the court stated as follows:

"This Court has interpreted the statute as effecting a temporary total disability followed by a permanent partial disability resulting from the same accident. Galloway Coal Co. v. Stanford, 215 Ala. 79, 109 So. 377; Nolan v. Ernest Const. Co., 243 Ala. 460, 10 So.2d 547. The effect is to deduct from the number of weeks provided for a permanent partial disability the number in which he was totally disabled, each period to be computed on a different basis."

We hold that the court should have allowed the 24 weeks at $43.09 per week for temporary total disability and fixed the remaining 276 weeks at $14.30 per week, and that the court erred to reversal for failure to do so.

■ As to appellant's remaining assignment of error that the court should have determined the appellant's loss of earning capacity at 90% to 100% instead of 33⅓%, we think the Supreme Court resolved that question in Bass v. Cowikee Mills, 259 Ala. 391, 393, 67 So.2d 12, 13:

"On certiorari to review judgments in compensation cases, this court will not look to the weight of the evidence as to any fact found by the trial court, but simply to see if there is any evidence to support facts found by the trial court, and this rule applies when the award or compensation is denied as well as where there has been a judgment favorable to the plaintiff. Our review here on certiorari is confined to questions of law apparent upon the face of the record. Ex parte W. T. Smith Lumber Co., 206 Ala. 485, 90 So. 807; Ex parte Jagger Coal Co., 211 Ala. 11, 99 So. 99; (Other citations omitted.)

"Where testimony is conflicting, but there is testimony supporting the finding of the trial court in proceedings under the Workmen's Compensation Act, such finding is conclusive. Martin v. Sloss-Sheffield, etc., 216 Ala. 500, 113 So. 578."

The court's finding as to loss of earning capacity is affirmed on the authority of the Bass v. Cowikee case, supra.

Application for rehearing granted. Former opinion withdrawn. Affirmed in part and reversed and remanded in part with directions.