Larry L. Humphreys (the "worker") was injured on April 29, 1995, while working as a truck driver for Elite Transportation Services (the "company"). On September 20, 1995, he sued for workers' compensation benefits, alleging that he had been permanently and totally disabled as a result of the on-the-job injury. After a trial on the matter, the trial court determined that the worker was permanently and totally disabled and awarded workers' compensation benefits based on his pre-injury average weekly wage of $600. The company appeals, challenging the trial court's determinations that the worker is permanently and totally disabled and that the worker's pre-injury average weekly wage was $600. We affirm.
The review of this case is governed by the new Workers' Compensation Act, which states in pertinent part: "In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Ala. Code 1975, § 25-5-81(e)(2). Therefore, this court "will view the facts in the light most favorable to the findings of the trial court." Whitsett v. BAMSI, Inc.,652 So.2d 287, 290 (Ala.Civ.App. 1994), overruled on other grounds, Ex parte Trinity Industries, Inc., 680 So.2d 262, 269
(Ala. 1996). Further, the trial court's finding of fact is supported by substantial evidence if it is "supported by 'evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' " Ex parte Trinity, 680 So.2d at 268-69 (quoting West v. Founders Life AssuranceCo. of Florida, 547 So.2d 870, 871 (Ala. 1989), and citing §12-21-12(d)). Our review of legal issues is without a presumption of correctness. Ala. Code 1975, § 25-5-81(e)(1); seealso Ex parte Trinity, 680 So.2d at 268.
The company first challenges the trial court's finding that the worker is permanently and totally disabled. Under the Workers' Compensation Act, a worker is permanently and totally disabled if the worker is "incapacitate[d] . . . from working at and being retrained for gainful employment." Ala. Code 1975, § 25-5-57(a)(4)d. To be found totally disabled, a worker need not be totally helpless; he simply must be unable to perform his trade or obtain other gainful employment. SouthernLifestyle Homes v. O'Rear, 628 So.2d 645, 646 (Ala.Civ.App. 1993). The company argues that the worker is able to be gainfully employed; the company's argument is based upon the testimony of its experts at trial, which indicated that the worker was not totally disabled and that the *Page 441 
worker could find other employment that did not require heavy manual labor.
The evidence presented to the trial court on the issue of disability included the deposition testimony of Dr. Smith, the worker's physician; Dr. Kissel, a company-approved physician specializing in orthopaedics; and two vocational experts, Russ Gurley and Dr. Crunk. The medical records of Dr. McRae, another company-approved physician, were also considered by the trial court. In addition, the trial court heard the testimony of the worker.
Dr. Kissel determined the worker to be 10% permanently impaired as a result of his injury, based on the A.M.A guide (which is based on the patient's range of motion); however, Dr. Kissel admitted that the worker must stay out of work indefinitely if light duty was unavailable and if the worker had to lift over 20 pounds. Dr. Kissel indicated that the worker would have to live with his problems for the rest of his life. In addition, Dr. Kissel admitted that the assigned disability rating of 10% did not take into account the effect of pain on the worker. Dr. Kissel saw the worker four times.
In contrast, Dr. Smith, the worker's personal physician, testified that the worker would never again be gainfully employed because of his injury. The worker suffered extreme pain and depression, according to Dr. Smith, who placed the worker on various pain medications and Prozac for his symptoms. Dr. Smith's physical-capacity evaluation of the worker appears in the record, as well, and it reflects, among other things, that the worker would have difficulty sitting, walking, or standing for more than 2 hours at a time, that he could drive only 10 to 30 minutes at a time, that he could lift no more than 10 pounds, and that he could not use his hands for repetitive work. Dr. Smith continues to treat the worker for pain.
The worker himself took the stand and testified that he had done heavy manual labor for the last 15 years. He testified that he was 51 years old, that he has a sixth-grade education, that he does not have a G.E.D., and that he can read and write just enough to get by. He then described his life since the accident. He explained the severe pain in his lower back and the depression he has suffered from since the accident. He testified that he sleeps only 3-4 hours per night because he is awakened by pain. The worker testified that he can sit only 30 minutes to an hour at a time without taking a break either to lie down or to get up and move around for relief and that he can only walk for 15 minutes at a time. The worker also explained that he can do very little around the house and that his wife even has to help him dress. According to the worker, the pain he suffers affects his ability to concentrate and also makes it difficult to get along with others. The worker testified that he does not know of any type of work that he can do.
The testimony of the vocational experts was sharply conflicting. Dr. Crunk, the worker's expert, concluded that the worker was 100% vocationally disabled as a result of the injury he had suffered. Dr. Crunk indicated that he considered the worker's complaints of pain, his age, and his limited education in making a disability determination. Gurley, the company's expert, assigned the worker a 40-50% vocational disability rating. However, Gurley admitted that if he had considered just the testimony of Dr. Smith, then he would have considered the worker to be 100% permanently and totally disabled from gainful employment.
The trial court was faced with sharply conflicting testimony from the experts. A trial court is entrusted with the difficult task of resolving conflicts in the evidence presented to it.Sullivan, Long Hagerty, Inc. v. Goodwin, 658 So.2d 493, 495
(Ala.Civ.App. 1994); Jim Walter Resources, Inc. v. Budnick,619 So.2d 926, 928 (Ala.Civ.App. 1993). A trial court is not bound by the testimony of experts, and it may consider a worker's testimony concerning subjective pain in its determination of disability. Budnick, 619 So.2d at 927. The trial court's finding of permanent and total disability is supported by substantial evidence. The worker and Dr. Smith testified that the worker's continuing pain, depression, and medications would substantially interfere with his ability to concentrate and to perform work tasks. Dr. Crunk also testified that the worker's medical situation, *Page 442 
which includes severe, chronic pain and depression, resulted in a 100% disability. Although Gurley testified that he had placed persons with problems similar to this worker's in sedentary or light-duty jobs in the past, even he admitted that the worker's apparent lack of motivation, which could be rooted in his depression, would prevent an attempt at job placement at the present time. Therefore, the trial court's determination of disability is supported by substantial evidence, and we must affirm that determination.
The company also argues that the trial court erred in computing the worker's average weekly wage. It presents two arguments in support of its position. It first argues that the trial court did not consider any evidence other than the worker's testimony in its determination of average weekly wage. Payroll records and affidavits submitted to the trial court, the company argues, prove that the worker was not employed by the company for the 52 weeks prior to the accident. Therefore, the company argues that the trial court erred by not computing the average weekly wage by the formula given in Ala. Code 1975, § 25-5-57(b). Although the affidavits and records may support that argument, these items were not legal evidence for the trial court to consider. One of the affidavits submitted was the affidavit of the company's representative, Ms. Spann, who testified at trial. Her affidavit states that the worker was not employed by Elite for the 52 weeks preceding the accident. However, this argument was never made by the company at trial, and Ms. Spann did not testify to this fact when on the stand. These items were submitted to the trial court after trial, and affidavits are inadmissible hearsay that cannot be offered as substantive evidence. Associates Financial Services Co. ofAlabama, Inc. v. Barbour, 592 So.2d 191, 196 (Ala. 1991); C. Gamble, McElroy's Alabama Evidence § 260.01 (5th ed. 1996). The worker objected to these items being offered to the trial court after trial, and the trial court properly did not consider them.
The trial court indicated in its judgment that the worker's testimony concerning his wages was uncontradicted. After reviewing the record, we agree that the only legal evidence concerning the worker's wages was provided by the worker. The worker testified that his average weekly wage was $600. He arrived at this figure by explaining that he was paid $60 per trip, that he made 2 trips per day, and that he worked 5 days per week. Ms. Spann, the company representative could not refute this testimony. In fact, she testified that she was not familiar with how the worker was paid, and she stated "I'm not in payroll." She also appeared unfamiliar with an excerpt from a purported payroll record admitted as evidence at trial.
The trial court had no choice but to accept the worker's testimony concerning his wages. The company offered no evidence at trial to prove that he was paid less than $600 per week. Had the payroll officer or another company representative testified at trial or had the company produced payroll records at trial, the trial court would have had other evidence to consider when determining the worker's wage. The company never even argued at trial that the worker was not employed by the company for the 52 weeks preceding the accident; it advanced that argument only in a letter to the trial court after the trial. Therefore, the trial court could not and did not consider the company's claim.
The other argument advanced by the company is that the trial court improperly considered fringe benefits in arriving at the worker's average weekly wage. As the worker points out, this argument is simply not true. Although the trial court's order mentions fringe benefits in a rather confusing paragraph, the computation of the compensation due the worker clearly includes only the average weekly wage testified to by the worker ($600) and nothing else.
Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur. *Page 443