CRAWLEY, Judge,
concurring in part and dissenting in part.
Crimson presents four arguments on appeal, namely: (1) that the trial court erred by failing to enter specific findings of fact and conclusions of law on legal causation and medical causation; (2) that the trial court erred by determining that Eller had established legal and medical causation; (3) that the trial court erred by accepting as expert testimony the deposition of Dr. Johnny Bates; and (4) that the court erred because its finding of permanent total disability was not supported by substantial evidence. Although I find no reversible error as to the first three arguments, I dissent from this court’s affirmance of the finding of permanent total disability.
Permanent total disability is defined, in § 25-5-57(a)(4)d., Ala.Code 1975, as “any physical injury or mental impairment resulting from an accident, which injury or impairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment.” Total disability does not mean that the employee must be absolutely helpless, but means that the employee is not able to perform his or her trade and is unable to obtain other reasonably gainful employment. M.C. Dixon Lumber Co. v. Phillips, 642 So.2d 477 (Ala.Civ.App.1994); Mead Paper Co. v. Brizendine, 575 So.2d 571 (Ala.Civ.App.1990).
The trial court is not bound by expert testimony regarding the extent of a worker’s disability and must determine the percentage of disability based on all the evidence. See Reed v. James R. Fincher Timber Co., 659 So.2d 660, 663 (Ala.Civ. App.1995); Gibson v. Southern Stone Co., 518 So.2d 730, 731 (Ala.Civ.App.1987); Armstrong v. Lewis & Associates Construction Co., 469 So.2d 605 (Ala.Civ.App.1984). However, a trial court’s finding as to the degree of disability will be upheld only if it is, indeed, based on the evidence. In this case, I do not think there was any evidence upon which to base a finding that Eller was permanently and totally incapacitated “from working at or being retrained for gainful employment.”
Dr. Epstein sent Crimson a letter in which he gave his opinion that Eller would not be able to return to the job he had been doing before January 25, 1996, because any repetitive motion could damage the wiring on the implanted defibrillator. He stated:
“Mr. Eller’s implantable defibrillator does not prevent cardiac arrest but only treats the heart rhythms that cause the arrest and subsequent loss of consciousness, if they were to recur. Thus, Mr. Eller cannot work in any situation in which he could hurt himself or others were he to lose consciousness.... Mr. Eller would very much like to return to work, but from a medical point of view is unable to do so. I support his request for disability.”
On the strength of Dr. Epstein’s letter, Eller applied for and received Social Security disability benefits.
In deposition testimony, Dr. Bates agreed with Dr. Epstein that Eller “cannot do any sort of work where he’s going to have repetitive motion ... or lifting, or anything along that manner.” Neither doctor testified, however, that Eller was unable to work. Dr. Epstein said that Eller would be able to work at a job that did not require heavy lifting, repetitive motion, or interaction with large machinery or magnetic fields.
*1028 At the time of trial, Eller was 57 years old. He had an eleventh-grade education. He testified that for most of his life he had worked in heavy labor jobs, but he also testified that while he was in the United States Navy, he had worked as a mail clerk and as a security guard, and that, for a short time after his military service, he worked as a book salesman. Eller stated that he had not looked for a job since he had his defibrillator implanted. He said that his daily routine included helping his wife with the housework, going for walks, doing a little gardening, and occasionally mowing the lawn. He testified that he also works in his woodworking shop for short periods and that, since his surgery, he has built two small cabinets. He has also built a knitting machine and has learned to knit sweaters as a hobby.
Crimson presented the testimony of Jack Russ Gurley, a vocational consultant, who interviewed Eller and reviewed El-ler’s medical and employment history. Gurley gave his opinion that Eller had sustained a 45-49% vocational disability. He testified that there were sedentary or light-duty jobs in the surrounding three-county area that did not require repetitive motion and for which Eller was qualified.
Wade Gaston, the personnel manager at Crimson, testified that there were several jobs at Crimson that did not involve repetitive motion and for which Eller was qualified. He stated that Crimson employed six people with heart problems, including four security guards.
Three experts testified about the extent of Eller’s disability: Dr. Epstein; Dr. Bates; and Mr. Gurley. None said that Eller was totally incapable of working. Dr. Epstein and Dr. Bates described the kinds of jobs Eller could not do; Dr. Epstein said that Eller could do other kinds of jobs. Gurley gave his opinion that Eller was already qualified and, therefore, would not have to be retrained for a number of light duty jobs available in the area. He rated Eller as 45-49% disabled.
Eller did not testify that his heart condition or surgical implant caused pain, depression, or excessive fatigue. Compare, e.g., Elite Transportation Services v. Humphreys, 690 So.2d 439, 441 (Ala.Civ.App.1997)(trial court could consider worker’s pain and depression, which worker said interfered with his ability to concentrate, in determining degree of disability). Eller’s testimony indicates that even after he was unable to work at his former employment, he was energetic and resourceful enough not only to perform household chores and to continue his old hobby of cabinetmaking, but also to take up the new hobby of knitting and to build the equipment needed for that hobby.
The evidence established that Eller left school after the eleventh grade and that he did not have a high school diploma. There was no evidence, however, that Eller is cognitively impaired or mentally unable to adapt to new employment. Compare, e.g., Fovil Mfg. Co. v. Watts, 569 So.2d 406, 409 (Ala.Civ.App.1990) (trial court considered worker’s IQ of 79 in determining whether he was employable); Bailey v. Walker Regional Medical Center, 709 So.2d 35, 36 (Ala.Civ.App.1997) (in determining extent of disability trial court considered limited ability of worker who could “barely read and write at the third-grade level”); Wright v. Goodyear Tire & Rubber, 591 So.2d 518, 519 (Ala.Civ.App.1991) (trial court considered worker’s lack of education and “low average” IQ in determining degree of disability).
Because I do not believe that the trial court’s finding of permanent total disability is supported by substantial evidence, I must respectfully dissent from that portion of the majority opinion holding otherwise.
THOMPSON, J., concurs.