[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 826 
This is the second time these parties have been before this court. See Cagle v. Brock Blevins, Inc., 723 So.2d 65
(Ala.Civ.App. 1998) ("Cagle I").
Charles Cagle sued his employer, Brock Blevins, Inc., seeking to recover workers' compensation for injuries he had sustained on January 23, 1993, during the course of his employment with Brock. The trial court found that Cagle had sustained bilateral inguinal hernias and had strained his back, his right hip, and his right knee as a result of that accident. The court further found that Cagle had suffered from a preexisting condition that was not aggravated by the on-the-job accident and that Cagle had refused surgery to repair the hernias. The trial court concluded that Cagle was not entitled to any compensation benefits. Cagle I, 723 So.2d at 66. This court reversed the judgment of the trial court, holding that the evidence did not support the trial court's finding that Cagle had had a preexisting condition that was not aggravated by the on-the-job accident. We remanded the case for the trial court to determine Cagle's disability, if any. For a complete recitation of the facts, seeCagle I.
On remand, the trial court entered an order stating, in part:
 "At the original trial of this case, this Court reviewed medical depositions and records, observed the employee not only as a witness but in and around the courtroom. Based upon the testimony of Dr. Bryan Dewees, who testified by deposition, and its own observations the Court was convinced that the employee was permanently and totally disabled from reasonable gainful employment. The existence of what this Court perceived as a preexisting condition is the only finding of fact that prevented this Court from concluding that the employee had experienced a 100% loss of earning capacity and hence awarding workers' compensation benefits accordingly. That finding having been reversed, this Court does find that the employee has suffered a 100% loss-of-earning capacity and is permanently and totally disabled as a result of the on-the-job injury that is the basis of this claim. This finding is in compliance with the appellate court's instruction on remand."
Brock appeals.
This case is governed by the new Workers' Compensation Act. This new Act provides that an appellate court's review of the proof and its consideration of other legal issues shall be without a presumption of correctness. § 25-5-81(e)(1), Ala. Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. §25-5-81(e)(2). Our supreme court "has defined the term `substantial evidence,' as it is used in § 12-21-12(d), to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably *Page 827 
infer the existence of the fact sought to be proved.'" Ex parteTrinity Industries, Inc., 680 So.2d 262, 268 (Ala. 1996), quoting West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). This court has also concluded: "The new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc.,655 So.2d 1012, 1014 (Ala.Civ.App. 1995). At the time of the original trial in this case, Cagle was 55 years old, had completed the 10th grade, and had no GED certificate. His employment history consisted primarily of manual-labor jobs. He was employed as a construction "boilermaker" from 1968 until 1990. His job activities included "high rigging," climbing, crawling in tight spaces, and steel fabrication and welding. He testified that the employment included a great deal of heavy lifting and was strenuous.
Cagle had intestinal bypass surgery in 1974 to control his weight. As a result of the intestinal bypass, he suffers from tremendous gas pain, difficulty in urinating, diarrhea, and anemia. Cagle also had had a history of back pain before his workplace injury in January 1993. He did not work as a boilermaker for a period of approximately three years before the injury; however, he denied that his back pain had affected his ability to work. Cagle was a member of a union, through which he would receive his job assignments. He testified that the union stopped referring him for employment because he had sued it. Cagle testified that during this period he built his house, without assistance, and also helped his wife in her produce business and flea-market activities.
Cagle was injured during the course of his employment with Brock when a 300-pound "torch buggy" fell on his waist and groin. A handle on the buggy also struck Cagle on his right knee. Cagle said that when the accident occurred he felt a "terrible burning" in his groin, pain across his lower back, and pain in his right knee. He was diagnosed with bilateral inguinal hernias and was treated for back and right-knee strains.
Dr. Robert Swillie, a neurologist, saw Cagle in May 1993; Cagle was complaining of back pain, stiffness in his back, and right-hip pain. Dr. Swillie determined that Cagle had a genetic predisposition to an arthritic condition known as "ankylosing spondylitis" and that he had mechanical back pain as a result of a lumbar strain. Dr. Swillie testified that Cagle's workplace accident could have triggered or aggravated the ankylosing spondylitis so as to cause it to become symptomatic. Dr. Swillie stated that it would be difficult to differentiate the lumbar strain from the ankylosing spondylitis based on Cagle's complaints of pain. Dr. Swillie stated that the lumbar strain should be resolved in 8 to 12 months and that Cagle could return to his employment at that time, unless the ankylosing spondylitis remained active. Dr. Swillie further stated that the ankylosing spondylitis is progressive in nature and that, at best, Cagle could hope to remain at his current level of pain; however, he also stated that the symptoms could progress to a point at which Cagle would lose the functioning ability of his back.
Dr. John Michael Grelier, a rheumatologist, saw Cagle in June 1994. Dr. Grelier concluded that Cagle had exaggerated mechanical back pain, for which Dr. Grelier said he should be at maximum medical improvement, and that there was a "good likelihood" that Cagle had polyarthritis arthralgia, which he said was secondary to the intestinal bypass. Dr. Grelier determined that Cagle had the genetic marker indicating a predisposition to ankylosing spondylitis; however, he did not believe Cagle suffered from ankylosing spondylitis. Dr. Grelier also noted the bilateral inguinal hernias, but said there would not be a great deal of discomfort associated with them unless one of them became incarcerated. Dr. Grelier stated that Cagle's condition should not prevent him from returning to work. *Page 828 
Dr. G. Bryan Dewees III, a rheumatologist, has treated Cagle since January 1994. Cagle related to Dr. Dewees that he had had low-back pain for a while, but that after his workplace accident he had an increase of pain in his lower back and in his right hip and other joints. Dr. Dewees determined that Cagle had spondyloarthropathy.[1] Dr. Dewees further determined that Cagle had tenderness and decreased flexion in his lower back, osteoarthritic changes in his sacroiliac joints and hips, and decreased rotation in his hips. Dr. Dewees also determined that Cagle may have "reactive arthritis," which is associated with bacterial overgrowth that came as a result of the intestinal bypass. Dr. Dewees testified that Cagle's workplace injury aggravated or exacerbated his spondyloarthropathy to the point that he could no longer work, and he testified that Cagle's back pain is permanent. Dr. Dewees testified that Cagle is totally and permanently disabled as a result of his spondyloarthropathy.[2]
Dr. Dewees also testified that trauma could aggravate the "reactive arthritis." Dr. Dewees directed Cagle to do no heavy lifting, bending, twisting, stooping, or prolonged sitting. Dr. Dewees prescribed a program of 12 to 14 hours of rest per day, physical therapy, and analgesics. Dr. Dewees stated that violation of the restrictions would aggravate Cagle's spondloarthropathy.
Cagle testified that he had been in continuous pain since the accident. He stated that his hips will occasionally "give way," so that he falls. Cagle further testified that he has difficulty bending or stooping and that his joints hurt with any movement. He stated that the medications and physical therapy prescribed for him further aggravate his condition. He further testified that he could not return to work as a boilermaker because he cannot bend, stoop, or do any heavy lifting, and that he did not believe he could work full-time at any job.
We note that we apply a presumption of correctness to the court's findings of fact, including its determination of disability. Where ore tenus evidence is presented to the trial court, the court's findings of fact based on that evidence are presumed correct and will not be disturbed on appeal unless they are clearly erroneous and without supporting evidence. MutualSavs. Life Ins. Co. v. Hogue, 693 So.2d 530 (Ala.Civ.App. 1997). The test for permanent total disability is the inability to perform one's trade and to find gainful employment. MichelinNorth America, Inc. v. Hamby, 722 So.2d 770 (Ala.Civ.App. 1998). The court must apply a two-pronged test in determining whether a permanent total disability exists: the employee must be found to be incapable of returning to his trade, as well as incapable of being retrained for gainful employment. Id. "Total disability does not mean an entire physical disability or absolute helplessness." *Page 829 Id., at 773. The court is not required to make a specific finding that an employee cannot be retrained for gainful employment, because such a finding is implicit when the trial court concludes that the employee is permanently and totally disabled. Star Rails, Inc. v. May,709 So.2d 44 (Ala.Civ.App. 1997). "`[G]ainful employment means employment similar in renumeration to that earned prior to the injury. Implicit in this is that the gainful employment sought to be restored must be "suitable." By "suitable" we mean employment which is compatible with the employee's preinjury occupation, age, education, and aptitude.'" Trans Mart, Inc. v. Brewer, 630 So.2d 469,471 (Ala.Civ.App. 1993), quoting Ex parte Beaver Valley Corp.,477 So.2d 408, 412 (Ala. 1985). It is the duty of the trial court to make some determination as to the extent of disability. Hamby, 722 So.2d at 773. In making this determination, the trial court is not bound by expert testimony, but must consider all the evidence, including its own observations, and interpret it to its own best judgment. Burden v. Huckaba, 708 So.2d 199 (Ala.Civ.App. 1997). The court may also consider the employee's own subjective complaints of pain in determining disability. Hamby, 722 So.2d at 773.
After carefully reviewing the record, we conclude that the trial court's determination that Cagle is permanently and totally disabled is supported by substantial evidence. The trial court was charged with the difficult task of resolving the conflicting evidence in this case and making a determination as to the extent of Cagle's disability. Id. Cagle testified that he had been in continuous pain since the workplace accident and stated that he could not return to his former employment as a boilermaker. Cagle's work history is one of manual labor involving great physical exertion. The evidence indicates that Cagle could not return to "suitable" employment, as defined by this court inTrans Mart, Inc., supra. Dr. Dewees testified that Cagle's workplace accident had so aggravated his spondyloarthropathy that it prevented him from returning to work. Dr. Dewees testified that Cagle's back pain is permanent and that he is permanently and totally disabled from employment. Dr. Swillie testified that Cagle's workplace accident could have triggered his spondylitis, causing it to become symptomatic, and that if it remained "active" Cagle would be unable to return to work.
Brock also argues that Cagle should not be allowed any compensation because he has refused to undergo surgery to repair the bilateral hernias he suffered as a result of the workplace accident. Section 25-5-57(a)(6)b., Ala. Code 1975 provides:
 "b. Treatment. — All hernia, inguinal, femoral, or otherwise, proved to be the result of an injury by accident arising out of and in the course of the employment, shall be treated in a surgical manner by radical operation. If the injured employee refuses to undergo the radical operation for the cure of the hernia, no compensation will be allowed during the time the refusal continues. If, however, it is shown that the employee has some chronic disease or is otherwise in physical condition that the court considers it unsafe for the employee to undergo the operation, the employee shall be paid as otherwise provided in this chapter."
The medical evidence indicates that the hernias are repairable. The doctors recommended that Cagle undergo surgery to repair the hernias; however, he chose not to have the surgery. Cagle testified that he chose not to have the surgery because, he said, the pain medication aggravates his condition and the hernias will not affect his ability to return to work. Cagle argues on appeal that the hernia is not the sole cause of his disability and that the medical evidence indicates that he is permanently and totally disabled as a result of his back condition; therefore, he says, §25-5-57(a)(6)b. does not apply to disallow his compensation benefits. We agree. It is well settled that the Workers' Compensation *Page 830 
Act is to be liberally construed in order to effectuate the beneficent purposes of the Act. Cagle I, 723 So.2d at 68. The evidence suggests that the hernias are easily repairable with surgery, but that they are not the cause of Cagle's disability; it suggests, rather, that Cagle is disabled as a result of his back condition. We construe § 25-5-57(a)(6)b. to disallow compensation benefits for refusal to undergo surgery to repair a hernia only when the hernia is the primary cause of the employee's disability.
Brock next argues that this court's application of the law regarding preexisting conditions is unconstitutional. We note that this argument is presented for the first time on this second appeal of this case. It is well settled that issues not raised before the trial court cannot be raised for the first time on appeal. Mann v. Mann, 725 So.2d 989 (Ala.Civ.App. 1998).
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
Robertson, P.J., and Monroe and Crawley, JJ., concur.
Thompson, J., concurs in the result.
[1] Dr. Dewees stated that spondyloarthropathy, which causes inflammation to the spine, is a lower-grade condition than ankylosing spondylitis.
[2] In Cagle I, this court noted that Dr. Dewees had submitted a report to the Social Security Administration indicating that Cagle had likely been totally and permanently disabled since the late 1970s. This court determined that Cagle had a predisposition to and, in fact suffered from, spondyloarthropathy before the January 1993 accident. We noted that where employment aggravates or combines with a latent disease or infirmity to produce a disability, the pre-existing disability does not disqualify the employee's claim under the "arising out of and in the course of his employment" requirement of the Act if the employee was able to perform his job duties before the injury. Cagle I, 723 So.2d at 68. See also Holt v. Dunlop Tire Corp., 646 So.2d 74
(Ala.Civ.App. 1994). Further, if an employee is able to perform his job duties before the injury, no preexisting condition is considered to be present, because of the beneficent purpose of the Act.Cagle I, 723 So.2d at 68. This court determined that the evidence indicated that the condition alleged to be a preexisting condition did not prevent Cagle from performing the duties of his job. Id. Dr. Dewees opined that the workplace accident did exacerbate Cagle's condition to the point that he can no longer work.