896 So.2d 564 (2004)
V.I. PREWETT & SON, INC.
v.
Virginia BROWN.
2030343.
Court of Civil Appeals of Alabama.
August 20, 2004.
*566 E. Allen Dodd, Jr., of Scruggs, Dodd & Dodd Attorneys, P.A., Fort Payne, for appellant.
Donald R. Rhea of Rhea, Boyd, Rhea & Coggin, Gadsden, for appellee.
THOMPSON, Judge.
Virginia Brown sued her employer, V.I. Prewett & Son, Inc. (hereinafter referred to as "Prewett"), seeking to recover workers' compensation benefits for an on-the-job injury to her neck, shoulder, and arm. Brown asserted that her injury had developed into fibromyalgia. After conducting an ore tenus hearing, the trial court, on July 3, 2003, entered a judgment in which it found that Brown failed to establish the cause of her injury. Brown filed a timely postjudgment motion challenging the trial court's finding. The trial court granted Brown's postjudgment motion. After hearing arguments on the postjudgment motion, the trial court vacated its July 3, 2003, order and entered a judgment in favor of Brown on September 23, 2003. In the September 23, 2003, judgment, the trial court found that Brown had suffered an on-the-job injury that had developed into fibromyalgia and that Brown had suffered a 48% permanent partial impairment. Prewett timely appealed.
The principles that govern workers' compensation cases in Alabama are well established. The Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975, provides that this court may not reverse a trial court's findings of fact if those findings are supported by substantial evidence. § 25-5-81(e)(2), Ala.Code 1975. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In addition, this court has held:
"Where the testimony conflicts, the trial court's findings are conclusive, if supported by the evidence. Acustar, Inc. v. Staples, 598 So.2d 943 (Ala.Civ.App.1992). Also, when a trial court receives conflicting testimony, it, not this court, has a duty to resolve the conflict. Jones v. LeFlore, 421 So.2d 1287 (Ala.Civ.App.1982). Furthermore, the trial court is not bound by expert opinions; instead, to arrive at its judgment, `the trial court may consider all the evidence before it, as well as its own observations of the witnesses. The trial court may then interpret what it has heard and observed, according to its own best judgment.' Gibson v. Southern Stone Co., 518 So.2d 730, 731 (Ala.Civ.App.1987). Additionally, the assignment of the extent of disability is within the trial court's discretion and cannot be disturbed on appeal if there is evidence to support that decision. Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App.1988)."
Golden Poultry Co. v. Staggs, 660 So.2d 1348, 1352 (Ala.Civ.App.1995). This court will "consider the evidence in a light most favorable to the findings of the trial court." Ex parte Staggs, 825 So.2d 820, 822 n. 1 (Ala.2001).
Brown was 50 years old at the time of the trial and had worked for Prewett, a hosiery mill, for approximately 14 years. Brown was employed as a "top turner," i.e., she turned the tops of socks down for *567 further processing. As a top turner, Brown was required to lift a board of socks from an overheard rack; according to Brown, the board weighed between 8 and 10 pounds. The parties stipulated that Brown earned an average weekly wage of $395.19, or approximately 10 dollars per hour.
On March 17, 1998, Brown was lifting the board over her head when she felt a sharp pain in her neck. According to Brown, she had never felt such pain before. However, Brown did not report the injury to her supervisor that day; she finished her shift and proceeded home. Brown testified that she experienced frequent muscle spasms which kept her from sleeping that night. The following day, Brown called Kenneth Brown, her supervisor at Prewett, and notified him of the injury she had suffered. A "First Report of Injury" was filed, characterizing Brown's injury as a "strain to the left trapezius with spasm, neck pain." Brown returned to work on March 24, 1998, under a light-duty restriction; her salary was lowered to minimum wage. The record indicates that, at that time, Prewett began paying Brown temporary partial-disability benefits that supplemented her minimum-wage earnings.
Brown testified that she sought treatment for her on-the job injury from numerous physicians and chiropractors but that the pain continued. The record indicates two of Brown's treating physicians assigned her a physical-impairment rating of "0%" as a result of her March 17, 1998, injury. Approximately one year after the March 17, 1998, injury, Brown was seen by Dr. Bart Bailey, who diagnosed Brown with "fibromyalgia/myofascial pain syndrome." Dr. Bailey, in his deposition, stated that Brown's injury "at least substantially contributed" to her fibromyalgia. Dr. Bailey prescribed "trigger point injections" and "cervical epidural steroid blocks." The parties stipulated that Brown reached maximum medical improvement ("MMI") on October 27, 1998. Prewett continued paying Brown temporary partial-disability benefits after Brown reached MMI.
The trial court's September 23, 2003, judgment contained detailed findings of fact and conclusions of law. In its judgment, the trial court found that Brown's March 17, 1998, injury contributed to her fibromyalgia, and it determined that the fibromyalgia had caused Brown to suffer a 48% permanent partial impairment.
In its brief on appeal, Prewett first argues that Brown was required to present "clear and convincing" evidence that her fibromyalgia was work related. In support of its argument, Prewett cites United Defense, L.P. v. Willingham, 829 So.2d 771 (Ala.Civ.App.2002). In United Defense L.P. v. Willingham, the employee sought workers' compensation benefits for carpal tunnel syndrome and fibromyalgia and an injury to her neck and back. In that case, the employee contended that her job duties caused her carpal tunnel syndrome and fibromyalgia. Thus, it appears that the employee was claiming that her conditions either resulted from gradual deterioration or were cumulative stress disorders; the "clear and convincing evidence" standard would apply in both instances. See § 25-5-81(c), Ala.Code 1975. That conclusion is further supported by the fact that both the employer and the employee in that case agreed that the employee was required to meet the "clear and convincing evidence" burden of proof. United Defense, L.P. v. Willingham, 829 So.2d at 772. The trial court found that the employee was permanently and totally disabled as a result of her carpal tunnel syndrome and fibromyalgia. This court reversed the trial court's judgment, holding that the employee had not met her *568 burden of producing "clear and convincing evidence" that her carpal tunnel syndrome and fibromyalgia were work related. United Defense, L.P. v. Willingham, 829 at 773.
The Workers' Compensation Act addresses the burden of proof a worker must meet in order to be entitled to workers' compensation benefits:
"(c) Evidence. The decision of the [trial] court shall be based on a preponderance of the evidence as contained in the record of the hearing, except in cases involving injuries which have resulted from gradual deterioration or cumulative physical stress disorders, which shall be deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee's employment."
§ 25-5-81(c), Ala.Code 1975.
Thus, the burden of proof the worker must meet in a workers' compensation action depends not upon the nature of the condition for which the worker claims benefits, but upon the manner in which that condition was purportedly caused. Ex parte USX Corp., 881 So.2d 437 (Ala.2003). Our supreme court has explained:
"The Legislature's intent is clear, and the language of the statute unambiguous. The Act does not provide that the clear-and-convincing-evidence burden of proof should apply to all carpal tunnel injuries. Rather, it states that the clear-and-convincing-evidence burden of proof shall apply to injuries resulting from gradual deterioration or cumulative physical stress disorders. Thus, the burden of proof that should apply depends upon whether the injury was caused by a traumatic accident or by a gradual deterioration or cumulative stress. The cause of the injury is a determination for the trial court, just as is the applicable burden of proof. Therefore, if the trial court determines that the injury is not caused by gradual deterioration or cumulative stress but rather by a one-time acute trauma, or accident, the proper burden of proof is the preponderance of the evidence."
Ex parte USX Corp., 881 So.2d at 443; See also § 25-5-81(c), Ala.Code 1975.
In the present case, Brown claimed that her fibromyalgia developed as a result of her March 17, 1998, on-the-job injury. The trial court agreed, concluding that the March 17, 1998, on-the-job injury contributed to causing Brown's fibromyalgia. Therefore, we cannot say that Prewett has demonstrated that the trial court erred in failing to apply the "clear and convincing evidence" standard. Ex parte USX Corp, supra.
Prewett next argues that even assuming the "clear and convincing evidence" standard did not apply to the facts of this case, the trial court's judgment is not supported by substantial evidence. See Ex parte USX Corp., 881 So.2d at 441 ("A circuit court's judgment based on pure findings of fact will not be reversed if those facts are supported by substantial evidence."). This court applies a presumption of correctness to the trial court's findings based upon ore tenus proceedings, including its determination of disability. Brock & Blevins, Inc. v. Cagle, 775 So.2d 824 (Ala.Civ.App.1999). "`The trial court has much discretion in determining the loss of ability to earn and may consider such factors as age, education, past work history, and the effect of the injury on the employee's earning ability.'" G.UB.MK. Constructors v. Traffanstedt, 726 So.2d 704, 708 (Ala.Civ.App.1998) (quoting Paschel v. Emro Mktg. Co., 632 So.2d 971, 973 (Ala.Civ.App.1993)). In making this determination, the trial court is not bound by expert testimony; rather, it must consider all the evidence, including its own observations, and interpret it to its own best judgment. *569 G.UB.MK Constructors v. Traffanstedt, supra. The trial court may consider the employee's own subjective complaints of pain in determining disability. Elite Transp. Servs. v. Humphreys, 690 So.2d 439 (Ala.Civ.App.1997).
The trial court was presented with deposition testimony from Dr. Bart Bailey; Dr. Bailey asserted that, to a reasonable degree of medical certainty, Brown's on-the-job injury "at least substantially contributed" to her fibromyalgia. In addition, the trial court had before it evidence that Brown had experienced no problems with her neck, shoulder, or arm before March 17, 1998, as well as evidence that she had diligently followed up with every treatment made available to her in an effort to obtain some relief from constant pain. Further, Brown testified at trial, and the trial judge was able to observe, first-hand, her demeanor and credibility and the degree of discomfort to which she suffered. Mayfield Trucking Co. v. Napier, 724 So.2d 22 (Ala.Civ.App.1998). Although the evidence was in conflict, it is the trial court's duty to resolve those conflicts in the evidence, and it is this court's duty to determine solely whether the trial court's findings are supported by substantial evidence. Pearson v. Reflector Hardware Corp., 710 So.2d 443, 445 (Ala.Civ.App.1997). After considering the evidence in the record on appeal, we conclude that the trial court did not err in determining that Brown is permanently and partially disabled. We affirm that part of the trial court's judgment determining Brown to be 48% permanently and partially disabled.
Prewett next argues that the trial court erred in refusing to give it a credit for certain workers' compensation benefits it has paid to Brown. The parties stipulated that Brown reached MMI on October 27, 1998; that Prewett had paid Brown $2,690.81 in temporary total-disability benefits; and that Prewett had paid Brown a total of $21,843.90 in temporary partial-disability benefits. In its judgment, the trial court found that Prewett had paid Brown 10 weeks of temporary total-disability benefits and that Brown had 290 weeks of remaining eligibility for permanent partial-disability benefits. See § 25-5-57(a)(3)g., Ala.Code 1975 (compensation for a permanent partial disability shall not extend beyond 300 weeks and the number of weeks the employer paid temporary total-disability benefits shall be deducted from that 300 weeks to provide a credit for the payment of those benefits). Thus, the trial court properly credited Prewett for its payment to Brown of temporary total-disability benefits.
Prewett argues that the temporary partial-disability benefits it paid Brown after Brown reached MMI should also be deducted from the trial court's award of permanent partial-disability benefits.[1] In its postjudgment motion, Prewett alleged that it had paid $18,727.76 in temporary partial-disability benefits after Brown reached MMI.
In Sunnyland Foods, Inc. v. Catrett, 395 So.2d 1005 (Ala.Civ.App.1980), the trial court found the worker to be permanently and totally disabled. The employer paid the injured worker temporary total-disability benefits during his temporary total disability; it also paid those benefits to the worker after the worker was considered to be permanently and totally disabled but *570 before the entry of the trial court's judgment. The employer sought a credit for the amount of the benefits it had paid the worker before the trial court entered its judgment, and the trial court allowed the employer a credit for those benefits. This court reversed, concluding that § 25-5-57(a)(4), which governs permanent total disability, does not authorize a such a credit. Sunnyland Foods, Inc. v. Catrett, 395 So.2d at 1010. In so holding, this court noted that a credit might have been proper had the worker suffered a permanent partial disability, because § 25-5-57(a)(3)g., Ala.Code 1975, which governs compensation for permanent partial disabilities, contains a provision authorizing a credit under certain circumstances. Id.
In Gold Kist, Inc. v. Mullinax, 650 So.2d 937 (Ala.Civ.App.1994), the trial court assessed the degree of the worker's permanent partial disability and awarded the employer a credit for temporary total-disability benefits it had paid the worker, but it denied the employer a credit for permanent partial-disability benefits it had paid the worker. This court reversed that part of the judgment denying the employer a credit for the permanent partial-disability benefits it had paid. In so holding, this court stated:
"Our review of the Workmen's Compensation Act reveals nothing barring a credit for advance payments of permanent partial disability benefits. Although no section of the Act specifically provides for an employer to be given credit for permanent partial disability benefits paid prior to a trial court's judgment, the Act appears to favor the payment of benefits prior to litigation. In pertinent part, Ala.Code 1975, § 25-5-56, states,
"`All moneys voluntarily paid by the employer or insurance carrier to an injured employee in advance of agreement or award shall be treated as advance payments on account of the compensation. In order to encourage advance payments, it is expressly provided that such payments shall not be construed as an admission of liability but shall be without prejudice.'
"This court has interpreted § 25-5-56 as intended `to encourage the employer ... to make advance payments to the disabled employee without waiting for a determination of the question of liability, the length of disability, or the extent of the injuries.... [I]f the employer were [sic] not insured the employer may take credit for voluntary advance payments against the amount of ultimate liability.' March v. City of Huntsville, 45 Ala.App. 480, 483, 232 So.2d 662, 664 (Civ.App.1970)."
Gold Kist, Inc. v. Mullinax, 650 So.2d at 939 (footnote omitted; emphasis added).
More recently, this court has addressed the issue of awarding a credit pursuant to § 25-5-56 for benefits voluntarily paid by an employer before a settlement is reached or before a judgment is entered. In Hedgemon v. United Parcel Service, Inc., 832 So.2d 656 (Ala.Civ.App.2002), the worker sued seeking workers' compensation benefits. The employer voluntarily paid the worker permanent partial-disability benefits. However, the employer later asserted a counterclaim alleging that the worker had suffered no disability and seeking reimbursement for the permanent partial-disability benefits it had paid the worker. The trial court entered a judgment in which it determined that the worker had not suffered a vocational disability, and it ordered that the employer was entitled to be reimbursed for the permanent partial-disability benefits it had paid to the worker. This court affirmed that part of the trial court's judgment finding that the worker had suffered no vocational disability. Hedgemon v. United Parcel Serv., Inc., 832 So.2d at 659. With regard to the *571 trial court's determination that the employer was entitled to reimbursement for its overpayment of permanent partial-disability benefits, this court held that the employer could maintain a claim asserting a "common-law theory of recovery" to seek recoupment of amounts it had overpaid. Hedgemon v. United Parcel Serv., Inc., 832 So.2d at 662. This court remanded the action for the trial court to determine whether the employer had properly asserted such a common-law theory before it. Id.
In reaching our holding in Hedgemon, supra, this court reasoned:
"Our common law embodies various equitable and other remedies by which one party may recover from another monetary payments that the latter may not be entitled to retain. There is nothing in the [Workers' Compensation] Act [§ 25-5-1 et seq., Ala.Code 1975] that expressly deprives an employer of any common-law remedies that may otherwise be available for the recovery of monetary payments that, in equity and good conscience, do not belong to an employee. In this regard, Alabama's Act contrasts with Minnesota's workers' compensation laws, upon which the Minnesota decisions cited by the employee in his brief to this court are based. Although our Act was patterned after Minnesota's original workers' compensation act (see, e.g., Ex parte Kimberly-Clark Corp., 779 So.2d 178, 180 (Ala.2000)), our Legislature has seen fit not to adopt a provision comparable to Minn.Stat. § 176.179 (2000), which generally disallows reimbursement.
"Conversely, the Alabama Legislature has seen fit to adopt a provision not found in Minnesota's act, i.e., Ala.Code 1975, § 25-5-56, that expressly reflects a policy of encouraging voluntary payments by employers...."
Hedgemon v. United Parcel Serv., Inc., 832 So.2d at 659-60 (footnote omitted).
In this case, there is no express statutory authority providing for the credit to which Prewett claims it is entitled. However, § 25-5-56 encourages an employer to make voluntary payments of workers' compensation benefits during the pendency of a claim for such benefits; such a policy benefits an injured worker. "[T]he legislative intent of § 25-5-56 ... encourages employers to make advance payments during the period between the accident and the determination of liability and the extent of the injury." Gold Kist, Inc. v. Mullinax, 650 So.2d at 939. This court has explained that,
"[w]hile there is no uniform legislative or judicial approach to this subject, several courts have recognized that `the voluntary payment of compensation benefits during the pendency of [compensation] proceedings ... is a matter of great importance to an injured worker and should not be discouraged.' Western Cas. & Sur. Co. v. Adkins, 619 S.W.2d 502, 503-04 (Ky.Ct.App.1981). `Any statutory interpretation which would penalize an employer who voluntarily makes weekly payments to an injured employee in excess of his ultimate liability would certainly discourage voluntary payment by employers and would therefore constitute a disservice to injured workers generally.' Id. at 504. See also Apex Lines, Inc. v. Lopez, 112 N.M. 309, 312, 815 P.2d 162, 165 (Ct.App.1991) (allowing the award of overpaid benefits to an employer under a common-law restitutionary theory); Frazier v. AFG Indus., Inc., (No. 03S01-9308-CV-00058, June 14, 1994) (Tenn.1994) (unpublished) (to same effect)."
Hedgemon v. United Parcel Serv., Inc., 832 So.2d at 661.
*572 Given the foregoing, we conclude that the trial court erred in refusing to provide Prewett a credit for the temporary partial-disability benefits it paid Brown after she reached MMI. Therefore, we reverse the trial court's judgment as to this issue and remand this cause to the trial court for it to determine the appropriate amount to credit Prewett for its voluntary payment of those benefits.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY and PITTMAN, JJ., concur.
YATES, P.J., concurs in part and concurs in the result in part, with writing.
MURDOCK, J., concurs in part and dissents in part, with writing.
YATES, Presiding Judge, concurring in part and concurring in the result in part.
I concur with the main opinion's conclusion regarding the burden of proof required in this case and with its affirmance of the trial court's finding Brown to be 48% permanently and partially disabled. I concur in the result as to the main opinion's determination that Prewett is entitled to a credit for the temporary partial-disability benefits it paid to Brown after she reached maximum medical improvement. I write to note that I dissented in Hedgemon v. United Parcel Service, Inc., 832 So.2d 656 (Ala.Civ.App.2002), a case relied on in the main opinion. However, the facts and circumstances of that case are distinguishable from those presented in this case and do not warrant my dissenting here as to the credit issue.
MURDOCK, Judge, concurring in part and dissenting in part.
I concur with the main opinion in all respects except as follows:
The main opinion takes the position that Prewett's brief on appeal does not include an argument that Prewett was entitled to a credit for temporary partial-disability benefits it paid to Brown before she reached maximum medical improvement ("MMI"). In that brief, however, Prewett frames the issue at hand as "[w]hether V.I. Prewett & Son, Inc. should be given credit for or reimbursed for temporary partial disability benefits paid to the plaintiff prior to trial if the trial court's finding of permanent partial disability is permitted to stand." (Emphasis added.) Thereafter, Prewett subtitles a portion of the argument section of its brief as follows: "Prewett is entitled to a credit for temporary partial disability paid prior to trial." (Emphasis added.) In the body of its argument, Prewett states that "the issue before this court is whether Prewett should be credited for the amount of temporary partial disability benefits Prewett paid Brown." Among other things, Prewett's argument includes a citation to Hedgemon v. United Parcel Service, Inc., 832 So.2d 656 (Ala.Civ.App.2002), for the proposition that "a court must credit the employer for all voluntary payments made in advance of the judgment." (Emphasis added.) Although near the end of its argument Prewett also states that, if this court renders a judgment in favor of Brown, the law requires this court to credit Prewett for "at least" the amount of temporary partial-disability benefits paid to Brown since Brown reached MMI, on balance, I believe Prewett's brief to this court fairly raises the issue whether Prewett should receive a credit for all temporary partial-disability benefits it paid to Brown before the judgment.
The main opinion also asserts that Prewett presented no evidence to the trial court in support of a claim for a credit for temporary partial-disability benefits paid to Brown before she reached MMI. The essential evidence introduced by Prewett in this regard is simply the undisputed evidence that Prewett in fact paid such benefits *573 to Brown. The issue of Prewett's right to a credit for temporary benefit payments, whether made before or after Brown reached MMI, then becomes a question of law.
The same authority and reasoning relied upon in the main opinion to instruct the trial court on remand to provide Prewett with a credit for all temporary partial-disability benefits it paid to Brown after she reached MMI also supports the conclusion that Prewett should receive a credit for all temporary partial-disability benefits it paid to Brown before she reached MMI. I would instruct the trial court accordingly.
NOTES
[1] We disagree with Judge Murdock's interpretation of Prewett's brief on appeal as including an argument that it was entitled to a credit for temporary partial-disability benefits it paid Brown before she reached MMI; although that issue is mentioned in Prewett's brief, the argument is not sufficient to warrant this court's consideration of that issue. In any event, Prewett presented no evidence to the trial court in support of a claim that it would be entitled to such a credit.