815 P.2d 162

**APEX LINES, INC. and Fremont Indemnity Company, Petitioners–Appellees, Cross–Appellants,**

v.

**Joe E. LOPEZ, Respondent–Appellant, Cross–Appellee.**

No. 12010.

Court of Appeals of New Mexico.

March 7, 1991.

Paul Maestas, R. Alfred Walker, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for petitioners-appellees, cross-appellants.

Thomas E. Jones, J.D., Ltd., Albuquerque, for respondent-appellant, cross-appellee.

OPINION

APODACA, Judge.

This appeal originated from a petition filed by petitioners Apex Lines, Inc. and Fremont Indemnity Company (referred to collectively as employer) to reduce respondent Joe E. Lopez's (worker) workers' compensation benefits. Before filing the petition, employer had been voluntarily paying

temporary total disability benefits for a period of several years. Worker and employer appeal and cross-appeal respectively the resulting compensation order issued by the workers' compensation judge (judge). Only two of the issues raised by the parties merit publication, so only that part of the opinion discussing those issues will be formal and published.

The two issues meriting publication, raised by employer, are whether the judge (1) erred in awarding vocational rehabilitation benefits to worker, and (2) abused his discretion in refusing to require repayment by worker of amounts voluntarily overpaid by employer. We hold that the award of vocational rehabilitation benefits was not warranted and that the judge did not abuse his discretion in refusing the requested repayment. For the reasons stated below and in the unpublished portion of this opinion, we affirm in part and reverse in part.

### Award of Vocational Rehabilitation.

■ Employer challenges the judge's award of vocational rehabilitation benefits, contending there was insufficient evidence the benefits were necessary to restore worker to suitable employment. To establish entitlement to such benefits, worker had to prove he was unable to return to his prior employment and that rehabilitation services were necessary to restore him to suitable employment. See Nichols v. Teledyne Economic Dev. Co., 103 N.M. 393, 707 P.2d 1203 (Ct.App.1985). Worker also had to show he was a proper candidate for vocational rehabilitation, in that there was a likelihood the rehabilitation would restore him to suitable employment. See Jaramillo v. Consolidated Freightways, 109 N.M. 712, 790 P.2d 509 (Ct.App.1990).

■ Worker proved satisfactorily that he could not return to his former employment as a freight handler, a job requiring heavy lifting. Before the hearing, however, and after employer terminated worker's temporary disability benefits, worker obtained a light-duty job delivering pharmaceuticals. He experienced little difficulty performing the tasks of that job. His past employment history included positions as a messenger, delivering mail in a hospital, and as a warehouseman and delivery driver. Thus, his job delivering pharmaceuticals was a position that suited worker, based on his training and work experience. It was suitable employment in that respect. For this reason, we conclude that there was no evidence of his need for vocational rehabilitation to restore him to such employment.

Worker relies on the testimony of his treating physician, Dr. Maron, to the effect that worker should be retrained to obtain a light-duty job and get on with his life. In so doing, however, worker ignores the fact that Dr. Maron's testimony was based on an examination that took place in August of 1986, over two years before worker obtained his delivery job. In 1986, it may well have appeared that worker required retraining to obtain suitable employment. This later proved not to be the case, however, since worker was able to obtain and retain such employment without the rehabilitation. Dr. Maron's testimony was thus not relevant to the issue. Worker has not relied on any other evidence to support the award, and we have discovered none. In particular, there was apparently no evidence regarding the possible effectiveness of vocational rehabilitation to enable worker to obtain "more suitable" employment. Cf. id. (expert testimony concerning worker's need for rehabilitation and potential effectiveness of that rehabilitation presented to lower tribunal). On this basis, we reverse the judge's award of vocational rehabilitation benefits.

We observe there is nothing contained in the record concerning worker's weekly wages in his light-duty job, so we cannot compare the wages he earned before his accident with his post-injury wages. This information does appear in worker's deposition. However, the deposition was never introduced into evidence, and, at the hearing, worker did not testify about his wages in his new job. Consequently, we do not address the question of whether employment that is suitable in terms of a worker's past training and experience may not be suitable because of a differential in salary between that employment and the worker's

pre-injury wages. *See, e.g., Owens Country Sausage v. Crane,* 268 Ark. 732, 594 S.W.2d 872 (Ct.App.1980) (worker obtained employment for which he was qualified, but at half his pre-injury wages; vocational rehabilitation authorized); *Sidel v. Travelers Ins. Co.,* 205 Neb. 541, 288 N.W.2d 482 (1980) (court interprets statute to allow rehabilitation if injury causes reduction in earning power).

*Repayment of Amounts Voluntarily Overpaid.*

Following the injury in August of 1985, employer voluntarily paid worker temporary total disability benefits through January 31, 1989. The judge determined that worker's temporary total disability ended April 6, 1988, and that, from that point forward, he was entitled only to the scheduled injury benefits. The judge's decision meant that employer had overpaid worker from April 1988 to January 1989. The overpayment exceeds the future benefits to which worker was entitled under the compensation order, by approximately $800.00. Employer requested credit for the overpayment and also that worker be ordered to repay the excess of the overpayments over worker's scheduled injury benefits. The judge allowed the credit against future benefits but refused to order repayment. Employer appeals this refusal.

Prior to this appeal, this court has not been called upon to address the legal ramifications resulting if a voluntary overpayment by an employer exceeds the future benefits owed a worker. *See Paternoster v. La Cuesta Cabinets, Inc.,* 101 N.M. 773, 778, 689 P.2d 289, 294 (Ct.App. 1984) (reserving judgment on this issue). Our workers' compensation statute is silent on the issue, and fundamental fairness must consequently be our guide. *See id.* Employer argues that fundamental fairness and the policy of encouraging employers to pay benefits voluntarily militate in favor of requiring workers to repay amounts they have been overpaid. Employer also argues that well-established New Mexico law holds that payments made pursuant to a mistake of fact are recoverable, so that the erroneous overpayments

should be recoverable. *See Rabbit Ear Cattle Co. v. Frieze,* 80 N.M. 203, 453 P.2d 373 (1969).

■ We address employer's last point first. We disagree that the question of whether a worker remains disabled, and if so, to what extent, is a purely factual matter. A resolution of the question requires application of statutory standards to existing facts, which necessarily removes the issue from a purely factual context. Employer had knowledge of the relevant facts in this case. First, employer knew that worker had been injured and had undergone surgery. Second, employer knew the nature of the injury and had access to worker's medical records. If this appeal did not involve our workers' compensation law, employer's overpayments might not be recoverable at all in the form of any credit. *Cf. Rabbit Ear Cattle Co. v. Frieze* (payments made with full knowledge of facts are not recoverable); *State ex rel. Callaway v. Axtell,* 74 N.M. 339, 393 P.2d 451 (1964) (general rule is that payments made under mistake of law are not recoverable).

In *Paternoster,* however, this court established a doctrine applicable only to workers' compensation cases. *Paternoster* essentially held that the interest in encouraging voluntary payments mandated that some form of credit be permitted for overpayments resulting from such voluntary payments. We consider it necessary to reexamine our holding in *Paternoster,* in applying it to the facts of this appeal. For the reasons that follow, we hold that an employer will not necessarily be entitled to the full amount of a credit, if allowing the full credit would require repayment by a worker of overpaid amounts.

The fundamental fairness test of *Paternoster* is basically a balancing test. We believe this test should be discretionarily applied by the fact-finder, on a case-by-case basis, in situations where the credit for overpayment is so large that it equals or exceeds the future benefits owed worker. Factors that may be taken into account in determining whether it is equitable to cut

off benefits immediately, or to require repayment, will vary.

■ Some obvious considerations include the worker's culpability, if any, in allowing the overpayments to continue; the employer's negligence or lack of such negligence in making the overpayments; the worker's ability to repay sums to the employer; the hardship a worker would suffer if benefits were immediately cut off; and the amount of the overpayment that must be repaid if repayment is ordered. The fact-finder is in the best position to balance all of the relevant factors that may be essential in arriving at a decision that is fundamentally fair. *Cf. Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct.App.1988) (discussing fact-finder's ability to evaluate credibility of witnesses and decide where truth lies). Therefore, the decision to allow an immediate cut-off of benefits or to order repayment of overpaid amounts is discretionary with the fact-finder and will not be reversed absent an abuse of that discretion.

We do not believe our refusal to order an automatic repayment any time the voluntary overpayment exceeds a worker's future benefits will have an adverse effect on an employer's willingness to make voluntary payments, as employer suggests. Ordinarily, overpaid amounts do not equal or exceed the worker's future benefits, so that situations such as present in this appeal will be rare. In the usual case, an employer will receive full credit for the overpayment in the form of an offset that does not require an immediate cut-off of benefits or a worker's repayment of money to the employer. Where an immediate cut-off or repayment could result, we believe it is appropriate to balance the important principle of encouraging voluntary payments with the equally important principle of preventing undue hardship to workers. Permitting the fact-finder discretion to make the necessary determination is an appropriate means of applying the proper balance. *Cf. Georgia Casualty & Surety Co. v. Randall*, 162 Ga.App. 532, 292 S.E.2d 118 (1982) (applying Georgia statute that explicitly gives administrative law judges discretion to order repayment of overpayments).

■ We now proceed to apply the analysis noted above to the facts of this case. Doing so, we hold that employer has not established an abuse of discretion in the judge's refusal to order repayment. Worker was not released to work until July 1988. Thus, even if we could hold, as a matter of law, that he was to blame for part of the overpayment, we would not do so before that date. There was evidence that worker's doctor released him to return to his job, on a trial basis, one year earlier, but employer refused to rehire him, which would normally indicate to a worker that he was still disabled. Employer has pointed to no evidence in the record concerning worker's ability to repay the requested amounts, but we note that worker's new job was not a skilled or professional position, and it was unlikely that his pay was high. Additionally, although worker's doctor released him to work in July 1988, employer continued to pay temporary total benefits for six more months. The amount of the overpayment is not large, and depriving employer of that amount does not appear inequitable. Finally, we observe that the judge did allow a credit that completely eliminated worker's right to receive further compensation benefits, unless his condition worsened. For these reasons, we hold that no abuse of discretion occurred and affirm the refusal to require repayment. For the same reasons, we hold there was no abuse of discretion in disallowing a credit against future medical benefits.

CONCLUSION

Based on our discussion and the unpublished portions of this opinion, we affirm the judge's decision on all issues except the questions of the date the temporary disability ended, the award of vocational rehabilitation benefits, and the amount of attorney fees. We remand the case for entry of a new compensation order adjusting the date of termination of temporary disability and adjusting the overpayment offset amount accordingly. The new compensation order shall also eliminate the award of vocational

rehabilitation benefits. Finally, the judge shall reconsider the award of attorney fees and determine whether an adjustment is warranted.

IT IS SO ORDERED.

ALARID, C.J., and BIVINS, J., concur.