Jimmy L. Owsley (employee) filed suit for workers' compensation benefits, claiming that he had contracted pneumoconiosis or an occupational disease arising out of and in the course of his employment with Winston Furniture Company (employer). Following an ore tenus proceeding, the trial court found in favor of the employer. The employee appeals from the trial court's judgment. We affirm.
At the outset we note that appellate review in workers' compensation cases is a two-step process. This court will first look to see if there is any legal evidence to support the findings of the trial court. If such evidence is found, this court will then determine whether any reasonable view of that evidence supports the trial court's judgment. Ex parte EastwoodFoods, Inc., 575 So.2d 91 (Ala. 1991).
These are the pertinent facts: From 1983 to 1989 the employee worked as a welder for the employer, a manufacturer of aluminum furniture. In December 1989 the employee was admitted to the hospital, complaining of flu-like symptoms, heart palpitations, and shortness of breath. He was subsequently referred to a physician, who administered various tests, including bloodwork and pulmonary function examinations. Based upon the test results — and his understanding that the employee was exposed to aluminum dust in his workplace — the physician diagnosed the employee's condition as "aluminosis," or pneumoconiosis due to exposure to aluminum dust.
Occupational pneumoconiosis is defined as a lung disease brought on by the inhalation of minute particles of dust over a period of time. § 25-5-140(1), Ala. Code 1975. Testimony presented at trial indicated that the employee's welding station was located 25 to 100 feet from the employer's buffing and grinding department, where aluminum tubing used in making furniture was sanded with air grinders, *Page 14 
thereby sending aluminum dust particles into the air.
The employee testified that when he returned to work for the employer, his debilitating symptoms recurred. In January 1990, on the advice of his physician, the employee quit his job. He later found a lower paying job with another employer in a relatively dust-free environment. He stated at trial that he continues to suffer from shortness of breath, coughing, and fatigue and is required to use a nebulizer to medicate his lungs each night.
The employee argues that his on-the-job exposure to aluminum dust caused him to suffer occupational pneumoconiosis, within the meaning of § 25-5-140, Ala. Code 1975, and that, therefore, he is due to receive benefits for his disability and loss of earning capacity.
In order for an employee to recover workers' compensation for pneumoconiosis or another occupational disease, the employee must prove that the disease arose out of and in the course of employment. §§ 25-5-110 and -140, Ala. Code 1975. An occupational disease is not compensable if it is not caused or aggravated by the nature of the employment. Hall v. TeledyneFirth Sterling, 448 So.2d 395 (Ala.Civ.App. 1984). Further, an occupational disease is one that is more than temporary and one that denotes a serious disorder that has impaired the constitution or left in its wake some organic or chronic effect that has undermined an employee's general health. Dodson v.Atrax Division of Wallace-Murray Corp., 437 So.2d 1294
(Ala.Civ.App. 1983).
In its judgment entered on June 11, 1991, the trial court found that the employee had not met his burden of proof in showing that he had contracted occupational pneumoconiosis or any occupational disease arising out of and in the course of his employment. On this basis the trial court denied the employee any workers' compensation.
At trial the employee and employer presented expert medical witnesses who strongly disagreed as to whether the nature and symptoms of the employee's affliction were consistent with the respiratory ailments caused by pneumoconiosis and, specifically, aluminosis.
Testifying for the employee at trial and by deposition was Dr. Wyndol Hamer, a doctor of internal medicine in Birmingham who treated the employee from the time of his original referral. Dr. Hamer stated that it was his medical opinion that the employee suffered from aluminosis. Dr. Hamer, who indicated that he had treated approximately fifty cases of pneumoconiosis, testified that his diagnosis was based on several physical examinations of the employee, an X-ray examination, and pulmonary test results. He related that his diagnosis was also informed, to a degree, by the employee's own report that there was considerable aluminum dust in the air at his workplace, but testified that he had himself observed metallic particles on the employee's clothing during two office visits. Dr. Hamer stated that the employee complained of shortness of breath and experienced coughing spells during his office examinations. He also stated that while listening to the employee's lungs, he heard "wet rales," an abnormal rasping sound suggesting a restrictive lung disease. He further testified that an X-ray taken in December 1989 revealed interstitial markings or scarring in the lower part of the employee's lungs, which, he said, could be indicative of the inhalation of aluminum particulate.
The employee underwent a total of three pulmonary function tests prior to trial. Dr. Hamer stated that decreased pulmonary capacity indicates a restrictive lung ailment like aluminosis. He testified that pulmonary function tests given in December 1989 and July 1990 reflected some aspects of diminished lung capacity. However, he acknowledged that a later pulmonary function test, administered in November 1990, showed normal results. He also testified that the results of a CT-scan of the employee's chest revealed no lung disease. Nevertheless, it was Dr. Hamer's opinion that, due to the presence of aluminum dust in the lungs, the employee had a restrictive pulmonary disease that would permanently *Page 15 
limit his future activities and require close monitoring for the remainder of his life.
The employer presented the deposition testimony of Dr. William Rom, head of the division of pulmonary and critical care medicine at New York University. Dr. Rom is a specialist in pulmonary medicine and occupational medicine (which deals with diseases arising out of exposures in the workplace) and has published extensively in these fields. It was his medical opinion that the employee did not have aluminosis or pneumoconiosis. He did not think that the employee's work exposure caused or aggravated any possible lung condition, and it was his belief that there was, in fact, nothing wrong with the employee's pulmonary function.
Dr. Rom's diagnosis was based largely upon his review of deposition testimony from Dr. Hamer and the medical information regarding the employee (including results of all tests performed by Dr. Hamer and others). Dr. Rom gave three basic reasons for his belief that the employee did not have pneumoconiosis. First, he felt that the employee was not exposed to aluminum dust for a sufficient period of time and intensity. Second, he felt that the employee's pulmonary function tests did not indicate respiratory impairment. And third, he questioned whether his chest X-ray and CT-scan revealed pneumoconiosis.
Dr. Rom stated that aluminosis is a rare form of pneumoconiosis. He testified as follows regarding the employee's exposure to aluminum dust:
 "[Dr. Rom:] He doesn't have the exposure to the right kind of particles to cause aluminum-induced lung disease.
"[Q:] That is welding?
 "[Dr. Rom:] That is welding. If he were a grinder, where they produce respirable particles in larger quantities, if the duration were in terms of 20 or 30 years rather than six years —
 "[Q:] If he was a welder, you don't think he can get aluminosis?
 "[Dr. Rom:] That is highly unlikely to be believable.
 "[Q:] What if that welder were immediately adjacent to someone buffing [aluminum], would that person be able to get aluminosis in six years?
 "[Dr. Rom:] You would still need a greater duration than six years. Six years is extremely unlikely. The other thing to bear in mind, to produce aluminosis you need a latent period of 10 to 20 years before aluminosis develops. In other words, the six recent years are less impressive than the six years, 20 years ago."
Dr. Rom agreed with Dr. Hamer that respiratory impairment is usually indicated by abnormal pulmonary function tests. However, it was Dr. Rom's opinion that the results of the three tests — which were administered in December 1989 and in July and November 1990 — were normal, in that they showed normal lung volumes, normal diffusion rates, and normal capacity. He acknowledged that the December 1989 and July 1990 tests indicated a decreased "residual volume," but it was his opinion, based on the other normal readings, that the residual volume was improperly monitored. As further support for his diagnosis that the employee was not suffering from a permanent restrictive lung disease, Dr. Rom cited the fact that the most recent pulmonary test was normal in every respect.
Dr. Rom testified that the "nonspecific interstitial markings" revealed by the employee's chest X-ray were not, as Dr. Hamer indicated, necessarily reflective of a chronic lung disease. He indicated that follow-up X-rays are necessary to ascertain the permanency of such markings or scarring, further averring that such markings may be indicative of up to 150 etiologies, or causes, including the common cold. Dr. Rom also stated that a normal CT-scan, such as that of the employee, is conclusive as to the question of lung disease of any type.
Dr. Rom testified that the interstitial markings revealed by the X-ray might be attributed to siderosis, a temporary and relatively benign lung condition caused by inhaling iron oxide dust. The record shows that, prior to his work with the employer, the employee worked for over nine years as *Page 16 
a steel welder. The record also indicates that for over 20 years the employee smoked one-half to two packs of cigarettes per day. Dr. Rom stated that prolonged smoking could exacerbate and prolong a previously dormant condition of siderosis.
The employee asserts that the trial court erroneously relied on testimony from Dr. Rom that was predicated upon inadmissible and expressly excluded hearsay testimony, specifically an expert's survey measuring the ambient dust in the employee's workplace. However, in its order of June 1991 the trial court expressly states that it did not rely upon this excluded testimony in reaching its conclusions. Additionally, Dr. Rom's medical opinions were based on factors other than simply the intensity of aluminum dust in the employee's workplace. As noted above, his diagnosis took into consideration theduration of the employee's exposure, as well as the results of pulmonary tests, the X-ray, and the CT-scan.
The employee also contends that even if he has not demonstrated that he contracted pneumoconiosis from his work for the employer, he may still recover on the basis that his on-the-job exposure exacerbated a prior condition. However, it was Dr. Rom's opinion that the employee was not actually suffering from a permanent or disabling lung disease. Furthermore, the employee's assertion that his affliction was caused or aggravated by his exposure during work for the employer was not uncontroverted. Not only did Dr. Rom attribute other causes to his symptoms, but there was testimony at trial from another welder who had worked near the employee indicating that there was not an excessive amount of aluminum particles in the air in the employee's workplace. As is also the case with pneumoconiosis, in order for a disease to be occupational, it must derive from hazards that are in excess of those ordinarily incident to employment in general and different in character from those found in the general run of occupations. ElmoreCounty v. Hornsby, 533 So.2d 620 (Ala.Civ.App. 1988). See §§25-5-110(1) and -141, Ala. Code 1975.
This court recognizes that the workers' compensation laws should be liberally construed and that all reasonable doubts should be resolved in favor of the employee; however, the burden of proving the case is still on the plaintiff. TigerMotor Co. v. Winslett, 278 Ala. 108, 176 So.2d 39 (1965).
If any legal evidence supports the trial court's findings and any reasonable view of that evidence supports the trial court's judgment, this court will affirm. Eastwood Foods, 575 So.2d 91. In the instant case there is legal evidence that the nature and symptoms of the employee's affliction are inconsistent with the respiratory ailments caused by aluminosis or pneumoconiosis and that the employee's affliction was not caused or aggravated by his exposure to aluminum dust in the workplace. Because a reasonable view of this evidence supports the trial court's judgment, we must affirm that judgment.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.