832 So.2d 656 (2002)
Levert HEDGEMON, Sr.
v.
UNITED PARCEL SERVICE, INC.
2000589.
Court of Civil Appeals of Alabama.
April 19, 2002.
*657 Robert W. Lee, Jr., and Nancy H. Ippolito of Lee & Thornton, P.C., Birmingham, for appellant.
John F. Whitaker and Chaya Bail of Sadler Sullivan, P.C., Birmingham, for appellee.
PER CURIAM.
Levert Hedgemon, Sr. ("the employee"), sued his employer, United Parcel Service, Inc. ("the employer"), on September 5, 1997, seeking to recover workers' compensation benefits for a back injury he had suffered during the course of his employment. The employer voluntarily paid permanent-partial-disability benefits based upon a six-percent impairment rating assigned by the employee's treating physician. Subsequently, however, the employer later filed a counterclaim seeking reimbursement of the benefits it had paid, averring that, not long before the counterclaim was filed, the employee had been determined to have suffered no permanent disability. Following an ore tenus proceeding, the trial court entered the following judgment:
"This cause came on to be heard upon testimony taken and other evidence presented at an oral hearing, without jury. This case is basically a workmen's compensation case, but it has the additional issue of the employer's claim for reimbursement for money paid in good faith for permanent partial disability benefits if the Court finds that there is no permanent partial disability arising out of a compensable injury under the Workers' Compensation Act (`Act').
"The facts in this case are generally stipulated and not in dispute. The parties are subject to the Act and an employer/employee relationship existed on October 31, 1995, when the employee had an accident while driving for the employer in the line and scope of his employment. The employee's average weekly wage, including the value of benefits, was ONE THOUSAND ELEVEN AND 27/100 DOLLARS ($1,011.27). The employer paid temporary total disability benefits of EIGHT THOUSAND FOUR HUNDRED EIGHTY AND NO/ *658 100 DOLLARS ($8,480.00) (19 weeks and 6 days) and permanent partial disability benefits (`PPD') of SEVEN THOUSAND TWO HUNDRED SEVENTY NINE AND 35/100 DOLLARS ($7,279.35).
"It was thought that the employee had reached Maximum Medical Improvement (`MMI') no later than May 17, 1996, when he had been returned to work `full duty' by Dr. Keith Weaver and Dr. Weaver gave the employee a 6% permanent partial impairment to the body as a whole.
"In 1999, the employee had new medical problems which resulted in surgery being performed by Dr. [Rick] McKenzie in October 1999. Based upon the evidence submitted to it, the Court finds that the 1999 problems were not related to the 1995 accident and further that the problems are a natural condition of the employee and are not job related. Thus, the Court finds that the treatments by Dr. Rick McKenzie and Dr. Wesley Spruill are not related to the October 31, 1995, work related accident.
"Based on the May, 1996 opinion of Dr. Weaver, the employer has been making PPD payments to the employee. Subsequent doctors have now found that the employee has no PPD as a result of the accident. The employer is now seeking reimbursement of the PPD payments. It is the opinion of the Court that all parties were in error when they determined that the employee had a 6% PPD. Since the employee returned to full time work at a wage equal to and then greater than the amount he was making at the time of the accident, this is not to be considered vocational disability.
"In support of the employee's position, the Court notes that the rights under the Act are strictly statutory and that thus generally the remedies must be determined within the four corners of the Act. In support of the employer's position are the general principles that when money is mistakenly paid, the party paying the money is entitled to its return, and also the policy of the Act, which encourages an employer to make voluntary payments to the employee pending a final determination of the employee's rights. The Act provides that overpayment may be recouped from future payments due under the Act, but it is silent as to any right of reimbursement if no future payments are made.
"It is the opinion of the Court that since the Act allows recoupment of overpayments from future benefits, it should also be interpreted to allow recoupment of overpayments when there are no future benefit payments. To hold otherwise would conflict with the policy in the Act which encourages voluntary payments. The Court finds that the employee did reach MMI no later than May, 1996 and that he did not have permanent partial disability. The Court thus finds that the employer is entitled to a reimbursement of SEVEN THOUSAND TWO HUNDRED SEVENTY-NINE AND 35/100 DOLLARS ($7,279.35) from the employee."
The employee appeals.
This case is governed by the Workers' Compensation Act, as amended, § 25-5-1 et seq., Ala.Code 1975 (hereinafter "the Act"). The Act provides that an appellate court's review of the trial court's conclusions as to the appropriate standard of proof and other legal issues shall be without a presumption of correctness. Ala.Code 1975, § 25-5-81(e)(1). It further provides that when an appellate court reviews a trial court's judgment based on its findings of fact, that judgment will not be reversed if the findings of facts are supported by substantial evidence. Ala.Code 1975, § 25-5-81(e)(2). Our Supreme *659 Court "has defined the term `substantial evidence,' ... to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). This court has also concluded: "The new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
The employee contends that the trial court erred in determining that he had suffered no permanent disability. He relies upon medical evidence in the record that, he says, would support a determination that he suffered a six-percent permanent impairment.
This court has stated:
"A trial court is not bound to accept a physician's assigned impairment rating and is free to make its own determination as to an employee's impairment. The impairment rating assigned by a physician is but one factor a court may consider in satisfying its duty to determine the extent of one's disability. The trial court has the duty to determine the extent of disability and is not bound by expert testimony in making that determination; yet, in making its determination, it must consider all the evidence, including its own observations, and it must interpret the evidence in accordance with its own best judgment."
Fuller v. BAMSI, Inc., 689 So.2d 128, 131 (Ala.Civ.App.1996) (citations omitted). We note that the resolution of conflicting evidence is within the exclusive province of the trial court, and that we must affirm the judgment of the trial court if it is supported by substantial evidence. Ex parte Trinity Indus., supra. It is the trial court that is in the best position to observe the demeanor and credibility of the employee and other witnesses in a workers' compensation case. Ex parte Alabama Ins. Guar. Ass'n, 667 So.2d 97 (Ala.1995).
A detailed recitation of the facts and evidence in this case is not necessary. Suffice it to say that the trial court's determination that the employee suffered no permanent partial disability as the result of the work-related accident is supported by substantial evidence. Accordingly, the judgment of the trial court is affirmed as to that issue.
The employee also argues that the trial court erred in entering a judgment in favor of the employer on its counterclaim and in requiring him to reimburse the employer $7,279.35 in permanent-partial-disability benefits.
The trial court correctly points out in its judgment that remedies under Alabama's Workers' Compensation Act "generally ... must be determined within the four corners of the Act." The Act provides that workers who are permanently partially disabled are given the right to certain enumerated benefits; however, in this case, the trial court has determined that the employee is not permanently partially disabled.
Our common law embodies various equitable and other remedies by which one party may recover from another monetary payments that the latter may not be entitled to retain. There is nothing in the Act that expressly deprives an employer of any common-law remedies that may otherwise be available for the recovery of monetary payments that, in equity and good conscience, do not belong to an employee. In this regard, Alabama's Act contrasts with Minnesota's workers' compensation laws, upon which the Minnesota decisions cited by the employee in his brief to this court are based. Although our Act was patterned after Minnesota's original workers' *660 compensation act (see, e.g., Ex parte Kimberly-Clark Corp., 779 So.2d 178, 180 (Ala. 2000)), our Legislature has seen fit not to adopt a provision comparable to Minn.Stat. § 176.179 (2000), which generally disallows reimbursement.[1]
Conversely, the Alabama Legislature has seen fit to adopt a provision not found in Minnesota's act, i.e., Ala.Code 1975, § 25-5-56, that expressly reflects a policy of encouraging voluntary payments by employers. Section 25-5-56 provides, in pertinent part:
"All moneys voluntarily paid by the employer or insurance carrier to an injured employee in advance of agreement or award shall be treated as advance payments on account of the compensation. In order to encourage advance payments, it is expressly provided that the payments shall not be construed as an admission of liability but shall be without prejudice."
(Emphasis added.)
In Gold Kist, Inc. v. Mullinax, 650 So.2d 937 (Ala.Civ.App.1994), this court construed § 25-5-56 as being consistent with allowing credit for advance payment of permanent-partial-disability benefits. We explained that
"[t]his interpretation of § 25-5-56 favors the employee by encouraging employers to make payments to the injured employee while waiting, if necessary, for a court determination regarding liability and benefits due. The disallowance of credit for advance payments for permanent partial disability would, in all likelihood, discourage advance payments."
Id. at 939 (emphasis added). Under the same reasoning, it can be said that allowing employers to obtain reimbursement for overpayment of benefits, even if there are no future benefits against which the reimbursement can be credited, would also tend to promote advance payments to employees generally, consistent with legislative intent and with the beneficent purposes of the Act.
We must construe Alabama's Workers' Compensation Act as written. The Act, and Alabama precedents, express a policy *661 to encourage voluntary payments. The Act gives no right to permanent-partial-disability benefits to employees who are not permanently partially disabled. Unlike Minnesota's act, Alabama's Act does nothing to abrogate an employer's common-law rights as they bear on this issue.
While there is no uniform legislative or judicial approach to this subject, several courts have recognized that "the voluntary payment of compensation benefits during the pendency of [compensation] proceedings... is a matter of great importance to an injured worker and should not be discouraged." Western Cas. & Sur. Co. v. Adkins, 619 S.W.2d 502, 503-04 (Ky.Ct. App.1981). "Any statutory interpretation which would penalize an employer who voluntarily makes weekly payments to an injured employee in excess of his ultimate liability would certainly discourage voluntary payment by employers and would therefore constitute a disservice to injured workers generally." Id. at 504. See also Apex Lines, Inc. v. Lopez, 112 N.M. 309, 312, 815 P.2d 162, 165 (Ct.App.1991) (allowing the award of overpaid benefits to an employer under a common-law restitutionary theory); Frazier v. AFG Indus., Inc., (No. 03S01-9308-CV-00058, June 14, 1994) (Tenn.1994) (unpublished) (to same effect).
The trial court's judgment in this case ordered the employee to pay reimbursement of $7,279.35 to the employer. Obviously, such a result is not inconsistent with the authorities discussed herein. Nonetheless, we note that the trial court's judgment in this regard is based on its legal conclusion that, "since the Act allows recoupment of overpayments from future benefits, it should also be interpreted to allow recoupment of overpayments when there are no future benefit payments." There is no language in the Act, however, that expressly provides for such recoupment.
It is true that the Act does not bar such recoupment. In fact, the Act expresses a policy preference "to encourage advance payments" and provides that the fact of advance payments "shall be without prejudice" to the employer. See Ala.Code 1975, § 25-5-56. Accordingly, the Mullinax court rightly recognized that, in order to make an award of future benefit payments to an employee that would result in the employee's receiving the correct total amount of benefits to which he or she was entitled under the terms of the Act, it obviously had to allow a credit for all similar payments made in advance of the trial court's judgment. Mullinax, 650 So.2d at 939. Nothing in Mullinax, however, is in any way inconsistent with the general principle that remedies under the Workers' Compensation Act "generally must be determined within the four corners of the Act." Indeed, the essence of our holding today is that there is no provision within the "four corners" of the Act stating that an employee has any right to permanent-partial-disability benefits unless the employee in fact meets the requirements for such benefits under the Act and, concomitantly, that the Act does not contain any language that would deprive an employer of any otherwise available common-law remedy to recover payments that, it is ultimately determined, need not have been made. By the same token, however, there is nothing within the four corners of the Act that expressly creates some additional remedy or cause of action under the Act itself, by which an employer can make such recovery. Thus, employers are left to their common-law remedies, if any.
For all that appears from the trial court's judgment, that portion of the judgment ordering reimbursement of overpaid benefits is based not upon any common-law theory of recovery, but only upon *662 an interpretation of the terms of the Workers' Compensation Act. Nonetheless, we will affirm a trial court's judgment if, as a matter of law, it is right for any reason, even one not recited by the trial court. See Ex parte Wiginton, 743 So.2d 1071, 1076-77 (Ala.1999). However, whether or not a common-law theory of recovery was presented at trial, see Rule 15(b), Ala. R. Civ. P., and adequately proven as a factual matter are questions that should be addressed in the first instance by the trial court in this case. We therefore vacate that portion of the trial court's judgment ordering such reimbursement and remand this case for additional findings and an entry of judgment consistent with this opinion.
AFFIRMED IN PART; VACATED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN and MURDOCK, JJ., concur.
THOMPSON, J., concurs in the result.
YATES, P.J., and CRAWLEY, J., concur in part and dissent in part.
YATES, Presiding Judge, concurring in part and dissenting in part.
I concur with the main opinion's affirmance of the trial court's determination that Hedgemon suffered no permanent-partial disability. However, because I believe that UPS has waived any argument that it has a right of recovery under a common-law theory, I must respectfully dissent from that portion of the main opinion that remands this case for the trial court to consider such a theory.
UPS began voluntarily paying Hedgemon permanent-partial-disability benefits based on an assigned impairment rating of 6% given by Dr. Keith Weaver. Subsequently, other treating physicians determined that Hedgemon had no permanent-partial disability. The court concluded that "all parties were in error" when it was determined that Hedgemon had a 6% impairment rating, and it ordered that UPS was entitled to be reimbursed for the permanent-partial-disability benefits it had paid to Hedgemon.
It is well settled that the workers' compensation laws should be liberally construed and that all reasonable doubts should be resolved in favor of the employee. Owsley v. Winston Furniture Co., 596 So.2d 12 (Ala.Civ.App.1992). Section 25-5-56, Ala.Code 1975, addresses the effect of the voluntary pretrial payment of benefits to an employee. Section 25-5-56 provides, in part:
"All moneys voluntarily paid by the employer or insurance carrier to an injured employee in advance of agreement or award shall be treated as advance payments on account of the compensation. In order to encourage advance payments, it is expressly provided that the payments shall not be construed as an admission of liability but shall be without prejudice."
This court has held that an employer is entitled to a credit against a final award of compensation for permanent-partial-disability benefits paid to the employee. Gold Kist, Inc. v. Mullinax, 650 So.2d 937 (Ala.Civ.App.1994). This court stated:
"To disallow credit for advance payment of permanent partial disability, as in this case, is contrary to the legislative intent of § 25-5-56, which encourages employers to make advance payments during the period between the accident and the determination of liability and the extent of the injury. This interpretation of § 25-5-56 favors the employee by encouraging employers to make payments to the injured employee while waiting, if necessary, for a court determination regarding liability and benefits due. The disallowance of credit for advance *663 payments for permanent partial disability would, in all likelihood, discourage advance payments."
650 So.2d at 939.
In this case the question is not whether the employer is entitled to a credit for permanent-partial-disability payments against a final award of compensation, but whether the employer is entitled to be reimbursed by the employee for permanent-partial-disability payments paid to the employee when the employee receives no future award of compensation.[2]
No provision in the Workers' Compensation Act allows an employer to be reimbursed for permanent-partial-disability benefits paid to the employee when the employee receives no final award of future compensation. Although it did not cite Mullinax, the trial court relied upon the same rationale set forth in Mullinax (to encourage the voluntary payment of benefits) in interpreting the Act and imposing upon the employee the burden of reimbursing the employer for permanent-partial-disability payments received when the employee is awarded no future compensation. I conclude that Mullinax is easily distinguishable from the present case and that its rationale will not support the trial court's interpretation of the Actwhich imposes upon the employee the burden of reimbursing the employer for permanent-partial benefits when the employee is awarded no future compensation.
In Mullinax the employee received an award of future compensation benefits against which the credit could be given. To award the employer credit for permanent-partial-disability benefits in that case is consistent with both the beneficent purpose of the Act and the policy of the Act favoring voluntary payments.
In this case, however, Hedgemon received no future award of compensation. To interpret the Act in a way that would require the employee to repay benefit payments that were made and received in good faith based on the medical evidence and other information that was available at the time, would likely impose a hardship upon the employee and would cross the line from the well-established principles of construing the Act in order to effectuate its beneficent purpose and resolving all doubts in favor of the employee; it would amount to construing the statute, and resolving all doubts, in favor of the employer. Such an interpretation could discourage the employee from seeking rehabilitation or further treatment in order to improve his quality of life if it was likely that he would have to repay substantial amounts of benefits already paid to him.
Our Legislature could enact legislation allowing such a refund of benefits paid under a mistake of fact or law, but, until such time as it does, the Workers' Compensation Act must be construed as it is written; currently, no provision in the Act would allow such a refund. Accordingly, UPS is not entitled, pursuant to the Act, to pursue a refund or reimbursement of the benefits it paid by mistake to Hedgemon.
The main opinion, however, concludes that UPS may pursue a common-law theory of recovery in order to obtain a refund of the monies paid to Hedgemon.[3] However, *664 UPS neither presented the trial court with a common-law theory of recovery nor argued in the trial court that it was entitled to pursue a common-law theory of recovery. Likewise, UPS has not argued to this court that it was entitled to pursue a common-law theory of recovery. Issues not presented to the trial court may not be considered by this court. Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992). Further, issues not argued on appeal are waived. Bush v. Laggo Props., L.L.C., 784 So.2d 1063 (Ala.Civ.App.2000). Because I believe that UPS has waived any argument that it may be entitled to a common-law theory of recovery, I must dissent.
CRAWLEY, J., concurs.
NOTES
[1] Minn.Stat. 176.179 provides, in pertinent part:

"[E]xcept as provided in this section, no lump sum or weekly payment, or settlement, which is voluntarily paid to an injured employee or the survivors of a deceased employee in apparent or seeming accordance with the provisions of this chapter by an employer or insurer, or is paid pursuant to an order of the workers' compensation division, a compensation judge, or court of appeals relative to a claim by an injured employee or the employee's survivors, and received in good faith by the employee or the employee's survivors shall be refunded to the paying employer or insurer in the event that it is subsequently determined that the payment was made under a mistake in fact or law by the employer or insurer. When the payments have been made to a person who is entitled to receive further payments of compensation for the same injury, the mistaken compensation may be taken as a partial credit against future periodic benefits. The credit applied against further payments of temporary total disability, temporary partial disability, permanent partial disability, permanent total disability, retraining benefits, death benefits, or weekly payments of economic recovery or impairment compensation shall not exceed 20 percent of the amount that would otherwise be payable.
"A credit may not be applied against medical expenses due or payable.
"Where the commissioner or compensation judge determines that the mistaken compensation was not received in good faith, the commissioner or compensation judge may order reimbursement of the compensation. For purposes of this section, a payment is not received in good faith if it is obtained through fraud, or if the employee knew that the compensation was paid under mistake of fact or law, and the employee has not refunded the mistaken compensation."
[2] New Mexico has developed a balancing test to be applied in situations such as the one presented by this case, balancing the principle of encouraging voluntary payments with the principle of preventing undue hardship to employees. Some considerations to be considered are (1) the employee's culpability in allowing the overpayments to continue, (2) the employer's negligence in making the overpayments, (3) the employee's ability to repay, (4) the hardship an employee would suffer if made to repay, and (5) the amount of the overpayment that must be repaid. Apex Lines, Inc. v. Lopez, 112 N.M. 309, 815 P.2d 162 (Ct.App.1991).
[3] Our supreme court has stated:

"`It is well settled that money voluntarily paid under a mistake of fact may be recovered, even where the party paying had means of ascertaining the real facts. However, it is equally well settled that money voluntarily paid with full knowledge of the facts but by reason of mistake of law cannot be recovered.'"
Stone v. Mellon Mortgage Co., 771 So.2d 451, 458 (Ala.2000), quoting Sherrill v. Frank Morris Pontiac-Buick-GMC, Inc., 366 So.2d 251, 257 (Ala.1978) (citations omitted).