This appeal concerns questions of law regarding the extraterritorial application of the Alabama Workers' Compensation Act, Ala. Code 1975, § 25-5-1 et seq. ("the Act"), as well as the right of parties paying benefits to injured employees under the auspices of the Act to recoup those parties' payments in the event that liability under the Act is demonstrated not to exist.
In June 2005, the Associated General Contractors Workers Compensation Self Insurance Fund, Alabama Branch ("the AGC Fund"), sued George Benton Williams ("the employee"), a Mississippi resident and an employee of Doster Construction Company ("the employer") who allegedly had suffered a workplace injury at a work site in Jackson, Tennessee; the AGC Fund also sued Zurich, N.A., a workers' compensation insurer. In its complaint, the AGC Fund alleged that the employer had procured coverage for payment of workers' compensation benefits in Alabama by contracting with the AGC Fund but had procured coverage through Zurich, N.A., in order to secure the payment of benefits with respect to workplace injuries in Tennessee. The AGC Fund also alleged that it had paid benefits to the employee under the Act based upon the employee's claim to entitlement to benefits under the Act but that, pursuant to § 25-5-56, Ala. Code 1975, those payments had *Page 559 
been made without waiving the AGC Fund's defenses, rights, and remedies. Among other things, the AGC Fund requested a declaration that the employee's employment was not principally localized in Alabama and that the AGC Fund was due to be reimbursed for all benefits it had previously provided to the employee as a result of his workplace injury. The employee answered the complaint, denying that the AGC Fund was entitled to relief on its claims against him. Zurich, N.A., filed a motion to dismiss in which it alleged the lack of a justiciable controversy; that motion was granted.
The AGC Fund filed a summary-judgment motion seeking the entry of a judgment declaring that, as a matter of law, the employee could not recover benefits under the Act and that the AGC Fund was entitled to reimbursement of workers' compensation benefits previously paid to the employee; that motion was supported by affidavits of the employer's financial controller and a representative of the AGC Fund's third-party claims administrator, excerpts from the employer's wage records, the employer's letter to the employee accepting him for employment, and the employee's "first report of injury" form. The employee replied by filing a letter brief in opposition to the AGC Fund's motion, after which the AGC Fund filed a reply memorandum and additional evidence (i.e., excerpts from the transcript of the employee's deposition). The trial court entered an order denying the AGC Fund's summary-judgment motion and attempting to certify its order of denial as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.; that court later denied a motion filed by the AGC Fund to "reconsider" that order. The AGC Fund's appeal from that order was dismissed by this court on the basis that the order was not capable of being made a final judgment under Rule 54(b). The trial court then entered a final judgment based upon the parties' agreement to "submit[] the case for [a] final hearing on the evidence, stipulations and arguments before the [trial court] at the time of the summary judgment ruling"; in that judgment, the trial court ruled that the employee was entitled to benefits under the Act based upon its conclusion that the employee "regularly worked at or from [the employer's] places of business in Alabama" and also ruled that the AGC Fund was not entitled to reimbursement. The AGC Fund appealed from that judgment.
As the Alabama Supreme Court noted in Alfa Mutual InsuranceCo. v. Small, 829 So.2d 743 (Ala. 2002), an appellate court's review of a declaratory judgment "is generally governed by the ore tenus standard" under which a presumption of correctness is indulged. 829 So.2d at 745. In contrast, when, as here, a declaratory judgment is based "entirely upon documentary evidence" and there are no disputed facts as to which the trial court has heard oral testimony, no presumption of correctness applies, and appellate review is de novo. Id.
It is undisputed that the employee suffered an injury to his left leg and foot on April 4, 2005, while performing work for the employer as a superintendent at a site in Jackson, Tennessee, at which the employer, a general contracting firm, was building a structure. Although the employee's injury occurred outside Alabama, that fact alone does not disqualify him from receiving benefits under the Act. See 2 Terry A. Moore, Alabama Workers' Compensation § 30:37 (West 1998). Generally, under the Act, if an employee, while working outside Alabama, suffers an injury as to which that employee would have been entitled to workers' compensation benefits under Alabama law had that injury occurred in Alabama, that employee will be entitled to benefits under the Act provided *Page 560 
that one of several alternative conditions has been fulfilled. Briefly stated, benefits under the Act are payable if, at the time of the injury, the employee's employment was "principally localized" in Alabama or the employee was working under an employment contract entered into in Alabama as to three discrete types of employment: (a) employment that was not "principally localized" in any state; (b) employment that was "principally localized" in another state but was provided by an employer that was not subject to that state's workers' compensation law, and (c) employment outside the United States. See Ala. Code 1975, § 25-5-35(d)(1)-(4); see also 2 Moore,Alabama Workers' Compensation § 30:37.
The foregoing discussion would indicate that the issue of extraterritorial application of the Act frequently requires resolution of where an employee's work is "principally localized." The Act expressly states that employment is "principally localized" in a particular state — whether Alabama or another state — when the employer "has a place of business in this or such other state and [the employee] regularly works at or from such place of business" or
"if [the employee] is domiciled and spends a substantial part of [the employee's] working time in the service of [the] employer in this or such other state." Ala. Code 1975, § 25-5-35(b). Given the importance of the issue, it is not surprising that the employer and the employee have divergent views concerning where the employee's employment was "principally localized." The employee asserts that he "regularly work[ed] at or from" the employer's Alabama offices rather than the employer's Tennessee construction site, stressing the first alternative definition set forth in § 25-5-35(b), whereas the employer argues that the employee was domiciled in Tennessee and spent a substantial part of his working time on the employer's Tennessee construction site, which focuses on the second alternative definition contained in § 25-5-35(b).
The question presented, however, is not one of first impression. In Ex parte Fluor ContractorsInternational, 772 So.2d 1157 (Ala. 2000), the Alabama Supreme Court considered the applicability of the Act to an injury received by a Tennessee resident employed by a South Carolina contracting firm while working at a construction site in Tennessee. In that case, the Alabama Supreme Court rejected the proposition that § 25-5-35(b) required that an employer's corporate headquarters be in a particular state for that state to be the principal location of an employee's employment with that employer, reasoning that under the plain language of § 25-5-35(b), employment is "principally localized" in a state if "the employee work[s] for that employer at a designated place within that state." 772 So.2d at 1159. Relying on the Alabama Supreme Court's reasoning, this court, inEx parte Fluor Corp., 960 So.2d 701 (Ala.Civ.App. 2006), concluded that a construction worker who had secured lodgings in Georgia and who had suffered a work-related injury within two weeks after beginning regular work at his employer's construction site in Georgia had worked in employment that was "principally localized" in Georgia despite having been transferred there from a North Carolina job site, a conclusion defeating that worker's claim that his work was not "principally localized" in any state under Ala. Code 1975, § 25-5-35(d)(2). 960 So.2d at 705-06.
In this case, the employee, who is a permanent resident of Mississippi, entered into negotiations by telephone with an Alabama-based representative of the employer, and the employer mailed the employee a letter extending a written offer of employment. *Page 561 
The employee then traveled to Montgomery, Alabama, to report to one of the employer's construction sites there, bringing a travel trailer, another automobile, and other items of personalty with him. While in Montgomery for approximately three months, the employee signed the employer's offering letter and performed work as a job superintendent at a hotel-construction site. On March 20, 2005, the employee was transferred by the employer to its job site in Jackson, Tennessee, and the employee moved his travel trailer and his other articles of personal property to Tennessee so that he would have a local residence while working on the project, which was expected to require at least four months of work. While at the construction site in Tennessee, the employee worked in an on-site office and made progress reports to a project engineer based in Nashville, Tennessee; the employee admitted at his deposition that he had "regularly worked from the Tennessee job site" after March 20, 2005. The only contact the employee had with Alabama during the period between his transfer to Tennessee and his injury was a Single trip to deliver project blueprints to a representative of the employer in Montgomery.
From the evidence, we conclude that the employee's employment may not properly be said to have been "principally localized" in Alabama under §§ 25-5-35(b) and 25-5-35(d)(1); rather, under Alabama precedents, the employee's employment was "principally localized" in Tennessee on the date of his injury. Although the employer did have places of business in both Alabama and Tennessee, by his own admission the employee had, at the time of his injury, ceased regular work at the Montgomery construction site where he had first been employed and had instead begun working at the employer's office located at the Jackson, Tennessee, construction site, from which he regularly made progress reports to the employer's Nashville, Tennessee, office. The existence of a principal employment location in Tennessee would defeat any contention that the employee's employment was principally localized in no single state or in a foreign country; moreover, the employee has not demonstrated that Tennessee's workers' compensation laws are inapplicable to the employer's activities in that state. We therefore conclude that the trial court erred in determining that the employee was entitled to benefits under the Act.
Our conclusion that the employee is not entitled to benefits under the Act also renders suspect the trial court's denial of the employer's claim for reimbursement of the sums it advanced to the employee respecting its potential liability to the employee under the Act for medical benefits and compensation. Under the Act, "[a]ll moneys voluntarily paid by the employer or insurance carrier to an injured employee in advance of [an] agreement or award shall be treated as advance payments on account of the compensation," and the Act expressly provides that such payments "shall not be construed as an admission of liability but shall be without prejudice." Ala. Code 1975, § 25-5-56. In this case, in which there is no compensation owed to the employee under the Act and in which there has been no express admission of liability to the employee under the Act, all the payments made by the AGC Fund respecting the employer's potential liability under the Act are subject to § 25-5-56.
In Hedgemon v. United Parcel Service, Inc.,832 So.2d 656 (Ala.Civ.App. 2002), this court considered whether an employer had a right to reimbursement of moneys advanced to an injured worker under the Act based upon a judicial determination that the worker had suffered no permanent disability. In a per curiam opinion joined *Page 562 
by two judges, that question was analyzed at length and answered in the affirmative:
 "Our common law embodies various equitable and other remedies by which one party may recover from another monetary payments that the latter may not be entitled to retain. There is nothing in the Act that expressly deprives an employer of any common-law remedies that may otherwise be available for the recovery of monetary payments that, in equity and good conscience, do not belong to an employee. In this regard, Alabama's Act contrasts with Minnesota's workers' compensation laws. . . . Although our Act was patterned after Minnesota's original workers' compensation act (see, e.g., Ex parte Kimberly-Clark Corp., 779 So.2d 178, 180
(Ala. 2000)), our Legislature has seen fit not
to adopt a provision comparable to [a Minnesota statute that] generally disallows reimbursement.
 "Conversely, the Alabama Legislature has
seen fit to adopt a provision not found in Minnesota's act, i.e., Ala. Code 1975, § 25-5-56, that expressly reflects a policy of encouraging voluntary payments by employers. . . .
 "In Gold Kist, Inc. v. Mullinax, 650 So.2d 937 (Ala.Civ.App. 1994), this court construed § 25-5-56 as being consistent with allowing credit for advance payment of permanent-partial-disability benefits. We explained that
 "`[t]his interpretation of § 25-5-56 favors the employee by encouraging employers to make payments to the injured employee while waiting, if necessary, for a court determination regarding liability and benefits due. The disallowance of credit for advance payments for permanent partial disability would, in all likelihood, discourage advance payments.'
 "Id. at 939 (emphasis added [in Hedgemon]). Under the same reasoning, it can be said that allowing employers to obtain reimbursement for overpayment of benefits, even if there are no future benefits against which the reimbursement can be credited, would also tend to promote advance payments to employees generally, consistent with legislative intent and with the beneficent purposes of the Act.
 "We must construe [the] Act as written. The Act, and Alabama precedents, express a policy to encourage voluntary payments. The Act gives no right to permanent-partial-disability benefits to employees who are not permanently partially disabled. Unlike Minnesota's act, Alabama's Act does nothing to abrogate an employer's common-law rights as they bear on this issue.
 "While there is no uniform legislative or judicial approach to this subject, several courts have recognized that `the voluntary payment of compensation benefits during the pendency of [compensation] proceedings . . . is a matter of great importance to an injured worker and should not be discouraged.' Western Cas. Sur. Co. v. Adkins, 619 S.W.2d 502, 503-04 (Ky.Ct.App. 1981). `Any statutory interpretation which would penalize an employer who voluntarily makes weekly payments to an injured employee in excess of his ultimate liability would certainly discourage voluntary payment by employers and would therefore constitute a disservice to injured workers generally.' Id. at 504. See also Apex Lines, Inc. v. Lopez, 112 N.M. 309, 312, 815 P.2d 162, 165 (Ct.App. 1991) (allowing the award of overpaid benefits to an employer under a common-law restitutionary theory); Frazier v. AFG Indus., Inc. (No. 03S01-9308-CV-00058, *Page 563 
June 14, 1994) (Tenn. 1994) (unpublished) (to same effect).[1]
 ". . . .
 ". . . [O]ur holding today is that there is no provision within the `four corners' of the Act stating that an employee has any right to permanent-partial-disability benefits unless the employee in fact meets the requirements for such benefits under the Act and, concomitantly, that the Act does not contain any language that would deprive an employer of any otherwise available common-law remedy to recover payments that, it is ultimately determined, need not have been made. By the same token, however, there is nothing within the four corners of the Act that expressly creates some additional remedy or cause of action under the Act itself, by which an employer can make such recovery. Thus, employers are left to their common-law remedies, if any."
832 So.2d at 659-62 (footnote omitted). Although the main opinion in Hedgemon was not concurred in by a majority of the court, in V.I. Prewett Son, Inc. v. Brown,896 So.2d 564, 570-71 (Ala.Civ.App. 2004), we liberally quoted from the main opinion in Hedgemon and closely followed its reasoning in reversing a judgment denying a credit against an employer's liability to pay permanent-disability benefits under the Act when that employer had overpaid temporary-disability benefits.
The employee contends that the AGC Fund did not properly raise the issue of its entitlement to reimbursement in the trial court. We disagree. As we have stated, the AGC Fund's complaint expressly invoked § 25-5-56, the statute that most directly bears upon the legal effect of workers' compensation benefits that are advanced to employees who, it is later determined, are not actually entitled to receive them; we also note that a copy of § 25-5-56 was supplied to the trial court by counsel for the AGC Fund in support of its summary-judgment motion and that the AGC Fund specifically asserted in its motion to "reconsider" the denial of that summary-judgment motion the trial court's "equitable power" to direct reimbursement of benefits advanced to the employee. Under those circumstances, it cannot reasonably be said that the AGC Fund is asserting its right of reimbursement for the first time on appeal. We further note that "[t]he rule requiring adherence to the theory relied on below . . . does not mean the parties are limited in the appellate court to the same reasons or arguments advanced in the lower court upon the matter or question in issue," Home IndemnityCo. v. Reed Equip. Co., 381 So.2d 45, 50 (Ala. 1980), and the AGC Fund thus properly relies upon Hedgemon andPrewett in support of its contentions of error.
The trial court's judgment is, as we have noted, primarily based upon its determination that the Act applies to the employee's injuries — a determination we have concluded to be erroneous. However, that court also opined that the AGC Fund did not have a right to reimbursement because it had voluntarily paid benefits under the Act to the employee and because, under general principles of law governing recovery in quasi-contract, voluntary payments may not be recovered; the employee's brief urges affirmance based upon that reasoning as well. We cannot agree with the trial court and the employee that the AGC Fund's advancement *Page 564 
of benefits to the employee on the employer's behalf with respect to the employer's potential liability to the employee under the Act amounts to a "voluntary payment." Under Alabama law, when a controversy exists between a payor and a payee such that money is paid under circumstances indicating that the payor claims a right to all or part of the money, such as when payment is made under protest, the amount of money to which the payor is entitled "is thereby left open to be adjudicated and itis not a voluntary payment." Smith v. Baldwin,237 Ala. 423, 425, 187 So. 192, 194 (1939) (emphasis added). In this context, our legislature has expressly provided that voluntary payments of workers' compensation benefits under the Act that take place before a settlement or an award has conclusively resolved all disputes between the parties "shall be treated as advance payments on account of the compensation" and "shall not be construed as an admission of liability but shall be without prejudice." Ala. Code 1975, § 25-5-56. Thus, to the extent that the common-law doctrine of "voluntary payment" might properly apply to bar recoupment of payments made in respect of an employer's potential statutory liability under the Act, that doctrine has been legislatively abrogated and cannot support the trial court's judgment as to that issue.
The employee's final contention is that allowing reimbursement of benefits to which the employee is not entitled under the Act would offend public policy and the principle of construing the Act in favor of injured employees. However, as the main opinion in Hedgemon notes, "allowing employers to obtain reimbursement for overpayment of benefits . . . tend[s] to promote advance payments to employees generally, consistent with legislative intent and with the beneficent purposes of the Act." 832 So.2d at 660. The Act encourages employers and their insurance carriers to voluntarily make payments to injured employees pending judicial determinations of liability and benefits due by removing any prejudice to payors' interests that might otherwise arise from making such payments. Denial of practical means for enforcing those payors' rights of recovery, such as by barring otherwise valid reimbursement claims, when the Act contains no express provisions that would compel such a result would, in our view, stretch the principle of liberal construction of the Act beyond the breaking point.
For the reasons we have stated, we conclude that the trial court erred in determining that the employee was entitled to benefits from the AGC Fund pursuant to the Act and erred in summarily denying the AGC Fund's claim for reimbursement of the advance payments made to the employee on behalf of the employer with respect to the employer's potential liability under the Act. We reverse the judgment of the trial court and remand the case with instructions to enter a judgment in favor of the AGC Fund with respect to its claim for a declaration that the employee is not due benefits under the Act. The trial court should also, on remand, address the merits of the AGC Fund's reimbursement claim without regard to whether the AGC Fund voluntarily made payments to the employee. We note, however, that in addressing the AGC Fund's claim on remand, the trial court may properly take into account, among other pertinent considerations, the following factors that were identified in two of the principal cases upon which the main opinion inHedgemon relied:
 "the [employee's] culpability, if any, in allowing the overpayments to continue; the employer's negligence or lack of such negligence in making the overpayments; the [employee's] ability to repay sums to the employer; the hardship [the *Page 565 
employee] would suffer if benefits were immediately cut off; and the amount of the overpayment that must be repaid if repayment is ordered."
Apex Lines, Inc. v. Lopez, 112 N.M. 309, 312,815 P.2d 162, 165 (Ct.App. 1991); see also Frazier v. AFG Indus.,Inc., (No. 03S01-9308-CV-00058, June 14, 1994) (Tenn. 1994) (unpublished).
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
[1] We note that since Hedgemon was decided the Tennessee Supreme Court has expressly reaffirmed that "[a] trial court has the authority to order that an employee reimburse the employer for any temporary benefits improperly paid by an employer." McCall v. National Health Corp.,100 S.W.3d 209, 213 (Tenn. 2003) (citing Frazier).