DONALDSON, Judge.
Lost River Oilfield Services, LLC (“Lost River”),[1] petitions this court for a writ of *372 mandamus directing the Mobile Circuit Court (“the trial court”) to dismiss Kenneth Bailey’s workers’ compensation action for lack of personal and subject-matter jurisdiction. Because we hold that the trial court does not have subject-matter jurisdiction over the proceedings, we grant the petition and issue the writ.
On March 21, 2014, Bailey filed a complaint seeking compensation and benefits in the trial court under the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975 (“the Act”). In the complaint, Bailey claimed that he had suffered an injury to his back on August 3, 2012, while working on at truck at Lost River’s place of business in Andrews, Texas. Bailey had previously filed a claim for workers’ compensation benefits for the same accident pursuant to the laws of North Dakota, where he had previously worked for Lost River, and was receiving benefits from North Dakota Workforce Safety & Insurance (“WSI”). Once Bailey filed his complaint seeking benefits in the trial court, WSI suspended Bailey’s benefits in North Dakota pending a determination whether the trial court would accept jurisdiction over the claim.
On May 16, 2014, Lost River filed in the trial court a motion to dismiss the complaint, along with a supporting memorandum, asserting in part that the trial court lacked subject-matter jurisdiction over the proceedings. Lost River attached to its motion three affidavits from Lost River general manager Kirk Taylor and one from Kimberly Dean, a third party who recruited Bailey to work for Lost River. In his third affidavit, Taylor stated, in pertinent part:
“2. ... Bailey never worked for Lost River anywhere in Alabama.
“3. Lost River has never had any employees engage in any work in Alabama.
“4. Lost River does not advertise job openings in any Alabama newspaper.
“5. [Bailey] is the only Alabama resident who has ever been employed by Lost River.
“6. Lost River is required by North Dakota law to obtain workers’ compensation insurance through WSI, a state agency, and it has at all times fully complied with the workers’ compensation laws of North Dakota.
“7. Upon the filing of the lawsuit, WSI, not Lost River, suspended payment of worker’s compensation benefits to [Bailey].
“8. Lost River has no control over WSI or its decision to suspend benefits.
“9. Lost River did not require [Bailey] to purchase a truck in Alabama or anywhere.
“10. A pre-employment drug test is required by the Department of Transportation for all truck companies that operate under a federal DOT number so this test[, which Bailey took in Alabama,] was not something uniquely associated with Lost River.
“11. At the time [Bailey] was hired, Lost River did not require applicants to take the pre-employment drug tests in any particular state, so [Bailey] could have taken the drug test anywhere.
“12. Lost River, like most employers in the oil field industry, requires its employees to take an online H2S certifi *373 cation due to the hazards and dangers of the oil industry.
“13. H2S certification is a course that provides an in-depth understanding of the dangers, hazards, and safe work practices associated with oil fields.
“14. Lost River did not require [Bailey] to take the H2S online course in Alabama.
“15. The H2S is taught by multiple online safely companies.
“16. By interviewing [Bailey] over the telephone on one occasion and hiring him to work in position located in another State, Lost River did not know that it could be sued in Alabama for anything related to [Bailey’s] employment since it does no business in Alabama and has no employees in Alabama.”
In his second affidavit, Taylor stated, in pertinent part:
“6. While working for Lost River in Andrews, Texas, ... Bailey reported to a trucking yard each morning and returned to the same trucking yard each night.
“7. During Mr. Bailey’s employment with Lost River in Texas, he lived in a trailer owned by Lost River.”
On May 29, 2014, Bailey filed a response in opposition to Lost River’s motion to dismiss. Neither party appended a copy of Bailey’s response to their submissions to this court. However, it appears that Bailey attached an affidavit to his response in opposition to the motion to dismiss in which he stated, in pertinent part:
“1. I am the Plaintiff in a lawsuit filed against Lost River ... related to an on-the-job injury I sustained while working for them on August 8, 2012, in the State of Texas.
“2. I first became aware of the position with this company by seeing the job posted on the Craigslist [Web site] through a recruitment service, Energy Recruitment Services, and their contact person, Kimberly Dean. I responded to that e-mail and forwarded my resumé of past work experience....
“3. Following the receipt of my re-sumé, Ms. Dean called me at my home in Alabama indicating that she had received my resumé. She then sent me an employment application to my home in Alabama, which I filled out and returned to her.
“4. Following the receipt of that employment application she sent me for a drug screen which I completed at a facility here in Mobile, AL, somewhere on Airport Boulevard. That drug screen was required as part of my pre-employment process with this company....
“5. The next step I completed was a telephone interview with an individual employed by Lost River ... by the name of Shane Gardener. He called me at my home here in Alabama for that interview. During the course of that interview, Mr. Gardener informed me that I had been hired and that I was to report to North Dakota by the following Monday to go to work.
“6. As a further part of this employment process, I was instructed by Ms. Dean with Energy Recruiting Services to complete an H2S certificate[] online, which I did here in Alabama as well....
“7. In response to the statement from Mr. Gardener that I was hired, I went out the next day and bought a pick-up truck to use to drive to North Dakota to report for work....
“8. I drove there and began working in North Dakota, where I worked for approximately two and one-half months. At the conclusion of that period of time, I had three weeks off. I went to visit with my wife in her native country of Thailand.
*374 “9. Upon return from my visit to Thailand, I flew back to North Dakota. I worked there for a period of less than two weeks and was then told to go to work at a job in Andrews, Texas. I was working there for approximately three weeks prior to the time of my injury.”
There is no indication that Bailey ever worked in Alabama for Lost River or that he was working anywhere other than in Texas at the time of his alleged injury.
The trial court held a hearing on the motion to dismiss on June 20, 2014. No transcript of that hearing has been provided to this court. On September 10, 2014, the trial court entered an order denying Lost River’s motion to dismiss. Lost River filed a motion to alter, amend, or vacate that order, which the trial court denied on September 24, 2014. On September 30, 2014, Lost River filed in this court a petition for a writ of mandamus directing the trial court to dismiss Bailey’s action for lack of subject-matter jurisdiction pursuant to § 25-5-35(d)(2), Ala.Code 1975, and for lack of personal jurisdiction over Lost River.
“ ‘[Mjandamus is a drastic and extraordinary writ that will be issued only when there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’
“Ex parte Horton, 711 So.2d 979, 983 (Ala.1998).”
Ex parte Fluor Corp., 960 So.2d 701, 704 (Ala.Civ.App.2006).
Bailey specifically stated in his complaint and in his response to the petition in this court that he is seeking benefits under the Act, pursuant to § 25-5-35(d)(2), for the injury that occurred in Texas. Lost River argues that, “at the time of his injury in Texas, Bailey was working for Lost River at a designated place within the state of Texas, rendering Ala.Code § 25-5 — 35(d)(2) inapplicable.” Section 25-5-35(d) provides, in pertinent part:
“If an employee, while working outside of this state, suffers an injury on account of which he or, in the event of his death, his dependents, would have been entitled to the benefits provided by [Article 2] and Article 3 of this chapter [Title 25, Chapter 5, “Workers’ Compensation,’ Ala.Code 1975, §§ 25-5-1
through 25-5-340] had such injury occurred within this state, such employee or, in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by [Article 2] and Article 3 of this chapter, provided that at the time of such injury:
“(1) His employment was principally localized in this state;
“(2) He was working under a contract of hire made in this state in employment not principally localized in any state; [or]
“(3) He was working under a contract of hire made in this state in employment principally localized in another state whose workers’ compensation law was not applicable to his employer .... ”
Lost River argues that Bailey’s employment at the time of the injury was principally localized in Texas, and, therefore, Lost River asserts, the requirements of § 25-5-35(d)(2) permitting a claimant to bring a claim under the Act for an out-of-state injury have not been met. We agree. In Ex parte Fluor Corp., this court stated:
“[The employee] regularly worked at [the employer’s] place of business in Georgia at the time of his alleged injury. [The employee] argues that he did not regularly work for [the employer] in Georgia because he had been trans *375 ferred from the North Carolina work site to the Georgia work site less than two weeks before his injury, he had not previously worked at the Georgia work site, and he had worked for [the employer] at numerous other locations in the past. However, ‘the time of [the] injury,’ § 25-5-35(d), Ala.Code 1975, is the relevant time for determining where an employee regularly works for the purpose of determining where the employee’s employment is principally localized. § 25 — 5—35(b), Ala.Code 1975. Although [the employee] had previously worked for [the employer] outside of Georgia, at the time of his alleged injury, [the employee] regularly worked for [the employer] in Georgia. [The employee] appears to have been working for [the employer] exclusively in Georgia at the time of the alleged injury, and his affidavit stated that he had been ‘transferred’ from the job site in North Carolina to the job site in Georgia. Furthermore, [the employee] was residing in a Georgia hotel on a weekly basis when he sustained his alleged injury.
[[Image here]]
“Because [the employer] operated a place of business in Georgia and [the employee] regularly worked at that place of business, [the employee’s] employment was principally localized in Georgia at the time of his alleged injury. § 25-5-35(b), Ala.Code 1975. Because [the employee’s] employment was principally localized in Georgia at the time of his alleged out-of-state injury, § 25-5-35(d)(2) does not grant the trial court subject-matter jurisdiction over [the employee’s] workers’ compensation claim.”
960 So.2d at 705-06. Similarly, in this case, Lost River operated a place of business in Texas. At the time of the alleged injury, Bailey regularly worked at that place of business, Bailey lived in a trailer provided by Lost River at that work site, Bailey’s work days began and ended at that site, and the injury itself occurred on the site. Aside from arguing that the events leading up to his entering into a contract of employment with Lost River occurred while he was in Alabama, Bailey fails to offer any evidence to indicate that his employment was not localized in Texas at the time of his injury. Therefore, § 25-5-35(d)(2) does not apply in this case, because the facts establish that, at the time of his alleged injury, Bailey’s employment was principally localized in Texas.
We note that Bailey did not allege in his complaint or argue to this court that the workers’ compensation laws of Texas do not apply to his injury and that, therefore, § 25-5-35(d)(3) would be applicable. See Associated Gen. Contractors Workers Comp. Self Ins. Fund v. Williams, 982 So.2d 557, 561 (Ala.Civ.App.2007) (“[T]he employee has not demonstrated that Tennessee’s workers’ compensation laws are inapplicable to the employer’s activities in that state. We therefore conclude that the trial court erred in determining that the employee was entitled to benefits under the Act.”).
Because the trial court lacked subject-matter jurisdiction to hear Bailey’s workers’ compensation claim, Lost River’s motion to dismiss was due to be granted. Therefore, we pretermit discussion of whether the trial court lacked personal jurisdiction over Lost River. For the reasons expressed in this opinion, we grant the petition for a writ of mandamus, issue the writ, and direct the trial court to enter a judgment dismissing the action.
PETITION GRANTED; WRIT ISSUED.
THOMPSON, P.J., and PITTMAN, ' THOMAS, and MOORE, JJ., concur.

. In the materials before us, this entity is referred to by various names, including "Lost River Oil Services, LLC,” “Lost River Oil Field Services,” and "Lost River Oilfield Services, LLC.” For purposes of this opinion, we have chosen to refer to this entity as "Lost River Oilfield Services, LLC,” and we have styled the case accordingly.